IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

_____

No. 14-2220

_____

DAVID S. ZINK, et al.,

Appellants,

v.

GEORGE A. LOMBARDI, et al.,

Appellees.

_____

Appeal from the United States District Court
for the Western District of Missouri, Central Division,
The Honorable Beth Phillips, District Judge

_____

ADDENDUM OF APPELLANTS

_____

Joseph W. Luby*                      Elizabeth Unger Carlyle
Death Penalty Litigation Clinic      6320 Brookside Plaza #516
6155 Oak Street, Suite C             Kansas City, MO 64113
Kansas City, MO 64113                (816) 525-6540
(816) 363-2795                       elizabeth@carlyle-law.com
jluby@dplclinic.com

Counsel for Appellants

*Additional counsel listed on inside cover*

John William Simon
Constitutional Advocacy, L.L.C.
7201 Delmar Blvd, Suite 201
St. Louis, MO 63130-4106
(314) 604-6982
simonjw1@yahoo.com
*Counsel for Appellants Bucklew*
*and Ringo*

Cheryl Ann Pilate, Mo. 42266
Morgan Pilate LLC
926 Cherry Street
Kansas City, MO 64106
(816) 471-6694
cpilate@morganpilate.com
*Counsel for Appellant Bucklew*

Jennifer Herndon
224 Hwy 67 North, # 122
Florissant, Mo 63031
(314) 831-5531
jenniferherdon@me.com
*Counsel for Appellants Goodwin,*
*Nunley, Strong, and Storey*

Richard H. Sindel
Kathryn B. (Kay) Parish
Sindel Sindel & Noble, P.C.
8000 Maryland, Suite 350
Clayton, Missouri 63105
(314) 721-6040
rsindel@sindellaw.com
kparish@sindellaw.com
*Counsel for Appellants Barnett,*
*Ringo, and Zink*

Michael J. Gorla
555 Washington Ave., Suite 600
St. Louis, Missouri 63101
(314) 621-1617
mjgorla@msn.com
*Counsel for Appellants Goodwin,*
*Nunley, and Strong*

Eric W. Butts
555 Washington Ave., Suite 600
St. Louis, Missouri 63101
(314) 621-1617
ewbtts@sbcglobal.net
*Counsel for Appellant Christeson*

Susan M. Hunt
819 Walnut
Kansas City, Missouri 64106
(816) 221-4588
shunt5733@aol.com
*Counsel for Appellant Clayton*

Lowell D. Pearson
Husch Blackwell LLP
235 East High Street
Jefferson City, Missouri 65102-1251
(573) 761-1115
lowell.pearson@huschblackwell.com
*Counsel for Appellant Clemons*

Gary E. Brotherton
Legal Writes, LLC 640
601 West Nifong Blvd.
Building 1, Suite C
Columbia, Missouri 65203
(573) 875-1571
gebrotherton@legalwritesllc.com
*Counsel for Appellant L. Taylor*

Phillip M. Horwitz
640 Cepi, Suite A
Chesterfield, Missouri 63005
(636) 536-9644
pmhlth1@aol.com
*Counsel for Appellant Christeson*

Kevin L. Schriener
Law & Schriener, LLC
141 N. Meramec Ave. # 314
Clayton, Missouri 63105-3705
(314) 480-3389
kschriener@schrienerlaw.com
*Counsel for Appellant Storey*

Jessica E. Sutton
Death Penalty Litigation Clinic
6155 Oak Street, Suite C
Kansas City, Missouri 64113
(816) 363-2795
jsutton@dplclinic.com
*Counsel for Appellant Cole*

Gino F. Battisti
Foley & Mansfield, PLLP
1001 Highlands Plaza Dr. W.
Suite 400
St. Louis, MO 63110
(314) 925-5700
gbattisti@foleymansfield.com
*Counsel for Appellant Worthington*

Kent E. Gipson
121 E. Gregory Boulevard
Kansas City, Missouri 64114
(816) 363-4400
kent.gipson@kentgipsonlaw.com
*Counsel for Appellants Worthington
    and Williams*

## TABLE OF CONTENTS – ADDENDUM

1.  Order dismissing Counts II through X, and deferring ruling on Count I (ECF Doc. 437), dated May 2, 2014.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

2.  Order dismissing Count I (ECF Doc. 443), dated May 16, 2014. . . . . . . . . 25

# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI CENTRAL DIVISION

DAVID ZINK, *et al.*,                    )
                                         )
        Plaintiffs,        )
                                         )
     v.                        )    Case No. 12-04209-CV-C-BP
                                         )
GEORGE A. LOMBARDI, *et al.*,            )
                                         )
        Defendants.        )

## ORDER

This matter comes before the Court on Defendants' Motion to Dismiss Second Amended Complaint, (Doc. 354). For the reasons below, Defendants' Motion to Dismiss is **GRANTED in part** and ruling is **DEFERRED in part**.

## I.     Background

Plaintiffs are death row inmates who bring suit against Defendants in their official capacities for constitutional violations arising from Missouri's execution protocol. Plaintiffs filed their original Complaint in the Circuit Court of Cole County, Missouri, and Defendants removed to this Court in August 2012. Shortly thereafter, Defendants filed a motion to dismiss the original Complaint for failure to state a claim. In the original Complaint, Plaintiffs alleged cruel and unusual punishment in violation of the Eighth Amendment, violations of the Supremacy Clause, enactment of an Ex Post Facto Law, and violations of the Separation of Powers doctrine. The Court denied Defendants' motion as to Plaintiffs' Eighth Amendment and Ex Post Facto claims, and granted the motion as to the Supremacy Clause and Separation of Powers claims. (Order, Doc. 31.) Plaintiffs later sought leave to amend their pleadings, which the Court granted. The Amended Complaint incorporated several recent changes to Missouri's

execution protocol, including the use of the drug pentobarbital, and the facts surrounding the execution of Plaintiff Franklin. The First Amended Complaint set forth seven counts, which were: (1) violations of the Eighth Amendment; (2) violations of the Ex Post Facto clauses; (3) violations of the separation of power guaranty under the Missouri Constitution; (4) deprivation of liberty without due process of the law in violation of the Missouri Constitution and the Fifth and Fourteenth Amendments of the United States Constitution; (5) denial of equal protection and due process in violation of the Missouri Constitution and the Fourteenth Amendment of the United States Constitution; (6) unlawful administrative agency action remediable under the Missouri Administrative Procedure Act; (7) violation of the First Amendment of the United States Constitution and the related provision under the Missouri Constitution.

In December 2013, Defendants filed a Motion for Protective Order, (Doc. 189), to prohibit discovery or disclosure of the identities of all execution team members. After a telephone conference on the issue, the Court ordered Defendants to produce the identity of the pharmacist who compounds the pentobarbital used in executions, the laboratory that tests the compounded drug, and the doctor who prescribes the compounded drug. (Doc. 204.) Defendants filed a petition for writ of mandamus as to the Court's Order with the Eighth Circuit.

A three-judge panel granted Defendants' petition for writ of mandamus as to the identity of the prescribing physician, but denied it as to discovery of the identities of the compounding pharmacy and testing laboratory. *See In re Lombardi*, 8th Cir. No. 13-3699 (Dec. 27, 2013). On a petition for rehearing, the Eighth Circuit issued an en banc opinion vacating the Court's Orders requiring disclosure of the identities of the physician who prescribes the chemical used in Missouri executions, the pharmacist who compounds the chemical, and the laboratory that tests the chemical for potency, purity, and sterility. *In re George A. Lombardi*, 741 F.3d 888 (8th Cir.

Case 2:12-cv-04209-BP   Document 437   Filed 05/02/14   Page 2 of 24
Appellate Case: 14-2220   Page: 6   Date Filed: 07/29/2014 Entry ID: 4180060   **Add. 2**

2014) (hereinafter "*Lombardi I*"); (*see also* Docs. 203; 204; 205.) Relying on the Supreme

Court's decision in *Baze v. Rees*, 553 U.S. 35 (2008), the Eighth Circuit found Plaintiffs failed to

state a claim under the Eighth Amendment in their original Complaint because they had not pled

a known and available alternative to the current execution method, and therefore, it was a "clear

abuse of discretion for the district court to allow the claim to proceed and to order on that basis

discovery of sensitive information[.]" *Id.* at 896. Similarly, the Eighth Circuit found that

Plaintiffs failed to properly plead their Ex Post Facto claim in the original Complaint, as the

punishment has remained the same and Plaintiffs had fair notice of it. *Id.* at 896-97. The Eighth

Circuit also concluded that the identities of the physician, pharmacist, and laboratory "are plainly

not relevant" to Plaintiffs' remaining claims, as "the merits of these claims do not depend on

[those identities]." *Id.* at 897. Plaintiffs petitioned the Eighth Circuit for a rehearing of this

decision, which was denied. *In re Lombardi*, 741 F.3d 903 (8th Cir. 2014) (hereinafter

"*Lombardi II*"). Based on the Eighth Circuit's decision and other developments in the case,

Plaintiffs moved to file a second amended complaint, (Doc. 312), which this Court granted,

(Doc. 339.) Plaintiffs also filed a petition for writ of certiorari with the Supreme Court regarding

the Eighth Circuit's opinion in *Lombardi I*, which was denied. *See Zink v. Lombardi*, Sup. Ct.

No. 13-8435 (Apr. 7, 2014).

Plaintiffs' Second Amended Complaint, which was filed before the petition for writ of

certiorari was denied, sets forth ten counts. Defendants move to dismiss all ten counts under

Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Plaintiffs allege as follows:

| | |
|---|---|
| Count I: Eighth Amendment Claim | New changes to the execution protocol, namely the use of pentobarbital, create a substantial risk of severe pain or an objectively intolerable risk of severe pain, and therefore violate the Eighth Amendment's prohibition against cruel and unusual punishment. |
| Count II: Ex Post Facto Claim | The new execution protocol creates a significant risk of increased punishment in violation of the Ex Post Facto Clauses of the Missouri |

| | and United States Constitutions. |
|---|---|
| Count III: Deliberate Indifference Claim | Defendants' conduct surrounding executions constitutes deliberate indifference to serious medical needs in violation of the Due Process Clause of the Fourteenth Amendment, the Eighth Amendment, and the Missouri Constitution. |
| Count IV: Medical Malpractice Claim | Defendants[1] are committing medical malpractice by administering, or aiding and abetting in the administration of compounded pentobarbital for the purpose of bringing about a quick death without gratuitous pain and suffering. |
| Count V: Intentional Infliction of Emotional Distress Claim | Defendants' use of compounded pentobarbital for executions intentionally inflicts and is tortuously inflicting emotional distress on Plaintiffs and Plaintiffs' loved ones. |
| Count VI: Separation of Powers Claim | Mo. Rev. Stat. § 546.720, which authorizes Defendant Lombardi to determine how the Department of Corrections carries out executions, violates the separation of powers guaranty under the Missouri Constitution. |
| Count VII: Due Process Claim | Defendants' conduct in obtaining execution dates has denied Plaintiffs access to the courts in violation of the Due Process Clauses of the Missouri Constitution and the Fifth and Fourteenth Amendments of the United States Constitution. |
| Count VIII: Equal Protection Claim | Defendants' failure to strictly comply with the execution protocol violates Plaintiffs' Due Process and Equal Protection rights under the Fourteenth Amendment of the United States Constitution. |
| Count IX: MAPA Claim | The new protocol constitutes an unlawful administrative agency action remediable under the Missouri Administrative Procedure Act ("MAPA"). |
| Count X: First Amendment Claim | Mo. Rev. Stat. § 546.720.2-4, in conjunction with the new execution protocol, violates the First Amendment of the United States and Missouri Constitutions by concealing information from the public without being narrowly tailored to serve a compelling government interest. |

## II.      Jurisdiction

Defendants first argue the Court should dismiss this case pursuant to Fed. R. Civ. P. 12(b)(1) because the Eighth Circuit held Plaintiffs' claims on the original Complaint failed as a matter of law and should have been dismissed. They assert that, therefore, it was abuse of discretion to allow the case to continue and permit Plaintiffs to amend their complaint and allege new injuries. Defendants also argue this Court has no Article III jurisdiction because the

---

[1] This claim is specific to Defendants M3, M2, M5, The Apothecary Shoppe, Analytical Research Laboratories, and all John Doe defendants who are healthcare providers or allegedly functioning as healthcare providers.

4

Case 2:12-cv-04209-BP   Document 437   Filed 05/02/14   Page 4 of 24
Appellate Case: 14-2220   Page: 8   Date Filed: 07/29/2014 Entry ID: 4180060      Add. 4

protocol changed the execution drug since Plaintiffs' original Complaint was filed, and the case was moot after that change occurred. Defendants arguments rely heavily on the Eighth Circuit opinion in *Ringo v. Lombardi*, 677 F.3d 793 (8th Cir. 2012). Plaintiffs respond that the Eighth Circuit's opinion in *Lombardi I* did not address mootness. Further, they contend the Eighth Circuit would have done so if the case was moot, as mootness is a threshold issue to determine a court's jurisdiction.

Article III standing requires a plaintiff to suffer a "concrete and particularized" injury, which is "actual or imminent, not conjectural or hypothetical" and "fairly traceable to the challenged action of the defendant," such that limiting the defendant will remedy the injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (quotations omitted). "When a case on appeal no longer presents an actual, ongoing case or controversy, the case is moot and the federal court no longer has jurisdiction to hear it." *Ringo*, 677 F.3d at 796.

The Court agrees with Plaintiffs that if this Court lacked jurisdiction to rule on the amended complaints, the Eighth Circuit would have explicitly addressed this issue in *Lombardi I*; however, it did not do so. Rather, the Eighth Circuit stated, "[t]here is still a live controversy over whether the Director must disclose the identities [of certain execution team members] for active use by opposing counsel." [2] *Lombardi I*, 741 F.3d at 893. Had the Eighth Circuit concluded it did not have jurisdiction or that the case was moot, it would not have proceeded to address the discovery issue before it. Further, the Eighth Circuit has issued opinions for all Plaintiffs who filed appeals and motions for stay of execution after both *Lombardi* decisions (Plaintiffs Smulls, Taylor, Ferguson, and Rousan), and would have addressed jurisdiction in those orders if it was an issue.

---

[2] Because the Court dismissed all counts other than the Eighth Amendment claim and the Ex Post Facto claim in the original Complaint, the Eighth Circuit must have been referring to the First Amended Complaint when stating that those identities were not relevant to the claims that remained.

5

As to Defendants' second argument, this case can be distinguished from *Ringo*. In *Ringo*, the plaintiffs challenged the use of a three-drug cocktail by alleging violations of the Food, Drug and Cosmetic Act and the Controlled Substances Act particular to those drugs. *Ringo*, 677 F.3d at 796. During the course of the suit, the state's provider of one of the drugs stopped producing the drug. *Id.* at 797. That supplier was the only domestic manufacturer of this drug, and the state was left with a limited supply of the drug and no way to replenish or substitute it. *Id.* The Eighth Circuit concluded that the Department of Corrections was "unable to carry out the challenged execution protocol as written," and opined that it could not reach a decision on a drug that the state had not yet identified for use in executions. *Id.* at 797-98. Because of the barriers and uncertainty surrounding the state's execution protocol, the Eighth Circuit determined that the plaintiffs had failed to establish a present, live controversy and their claims were moot.

In this case, Defendants' execution protocol can be carried out as written. Merely because they have changed the drugs used in the execution does not render this case moot. Defendants have identified the new drug to be used, and Plaintiffs were granted leave to amend their complaint to account for this change. Therefore, a live controversy is present in this case and, therefore, is not moot. *Cf. Cooey v. Strickland*, 588 F.3d 921, 923 (6th Cir. 2009) (concluding plaintiff's case was moot and vacating a stay of execution because the state had changed the lethal injection protocol to a single-drug procedure, but plaintiff's suit challenged the previous three-drug lethal injection procedure). This Court has Article III jurisdiction, and Defendants' motion is denied on this ground.

6

### III. Analysis of Counts I-X

#### a. Standard of Review

Dismissal under Fed. R. Civ. P. 12(b)(6) is proper where the complaint fails to state a claim upon which relief can be granted. *Cook v. ACS State & Local Solutions, Inc.*, 663 F.3d 989, 992 (8th Cir. 2011). The complaint must allege facts sufficient to "state a claim to relief that is plausible on its face." *Walker v. Barrett*, 650 F.3d 1198, 1203 (8th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In ruling on a motion to dismiss, the "court accepts as true all factual allegations but is not bound to accept as true a legal conclusion couched as a factual allegation." *Cook*, 663 F.3d at 992 (quotations omitted). Finally, the court must construe all reasonable inferences in favor of the non-moving party. *Palmer v. Ill. Farmers Ins. Co.*, 666 F.3d 1081, 1083 (8th Cir. 2012).

#### b. Count I: Eighth Amendment Claim

Plaintiffs allege that Defendants' use of pentobarbital from an undisclosed compounding pharmacy and use of a central line access create a substantial risk of severe pain or an objectively intolerable risk of severe pain. The pleading of this count is substantially similar to the first amended complaint, except Plaintiffs now "concede that other methods of lethal injection the Department could choose would be constitutional." Defendants argue Plaintiffs fail to state a claim because they have not alleged that the execution procedures are "sure or very likely to cause serious illness and needless suffering." Defendants further argue that Plaintiffs have not pled a feasible, readily available alternative that would substantially reduce a severe risk of harm. Plaintiffs respond by primarily arguing Defendants improperly heighten the pleading standard. Specifically, Plaintiffs argue they need only show that: (1) the current execution protocol creates

7

a "substantial risk of harm," not that it is "sure or very likely to cause serious illness or needless suffering;" and (2) other means of lethal injections are constitutional.[3]

Resolution of this issue begins with analysis of *Lombardi I* and *Lombardi II*. In *Lombardi I*, the Eighth Circuit specifically acknowledged "[P]laintiffs complain that Missouri's . . . execution protocol creates a substantial risk of severe pain or an objectively intolerable risk of severe pain, and thus constitutes cruel and unusual punishment[.]" *Lombardi I*, 741 F.3d at 895. However, the court ultimately held that Plaintiffs did not state a viable Eighth Amendment claim because they did not state "a plausible allegation of a feasible and more human alternative method of execution, or a purposeful design by the State to inflict unnecessary pain[.]" *Lombardi I*, 741 F.3d at 896. The Eighth Circuit specifically referenced the language used in Plaintiffs' previous complaints regarding the risk and level of pain necessary to plead an Eighth Amendment violation, and gave no indication such language was insufficient. Based on that fact and the case law cited by Plaintiffs, the Court concludes Plaintiffs sufficiently plead an Eighth Amendment claim regarding the risk and level of pain that the current execution protocol carries.

In *Lombardi II*, the Eighth Circuit addressed Plaintiffs' argument that the ruling regarding the pleading standard in *Lombardi I* conflicted with the Supreme Court's rulings in *Baze v. Rees*, 585 U.S. 35 (2008) and *Hill v. McDonough*, 547 U.S. 573 (2006). The Eighth Circuit reiterated the pleading standard set out in *Lombardi I*, differentiated the facts at hand from those in *Hill*, and expressly declined to address "whether alleging that the current method of execution creates a substantial risk of harm when compared to known and viable alternatives,

---

[3] Throughout their Opposition to the Motion to Dismiss, Plaintiffs repeatedly argue the Court's earlier ruling that amendment of the original complaint would not be futile is equivalent to a ruling that the claims survive a motion to dismiss. (*See* Doc. 181.) This argument is misguided. The ruling regarding futility was made in the context of a discussion as to whether Article III jurisdiction continued to an amended complaint filed after the execution protocol changed from the use of propofol to pentobarbital. In addition, the ruling was made with no notice as to what claims Plaintiffs would include in their amended complaint. Further, the ruling was made prior to the filing of the first amended complaint. The second amended complaint is the subject of this Motion to Dismiss.

8

without specifying an alternative, would be sufficient to state a claim in light of *Hill* and *Baze*. *Cf. Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)." *Lombardi II*, 741 F.3d at 905. Important to this Court's analysis, and in contradiction to Plaintiffs' argument that *Lombardi II* narrows the holding of *Lombardi I*, is the citation following the above quote. The full text of the opinion compares the language used in *Hill* and *Baze* to the pleading standard set out in *Iqbal*, a case decided after both *Hill* and *Baze*.

Therefore, this Court must decide whether conceding "that other methods of lethal injection the Department could choose to use would be constitutional," without specifying an alternative, is sufficient to state an Eighth Amendment claim. Since the Supreme Court's decision in *Iqbal*, the Eighth Circuit has held that a complaint must allege facts sufficient to "state a claim to relief that is plausible on its face." *Walker v. Barrett*, 650 F.3d 1198, 1203 (8th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To sufficiently plead a plausible claim, the factual content of the claim must allow "the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Horras v. Am. Capital Strategies*, 729 F.3d 798, 801 (8th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678)). "Labels and conclusions," "formulaic recitations of the elements of a cause of action," and "naked assertions devoid of further factual enhancement" are not sufficient pleadings to survive a motion to dismiss. *Id.* (quoting *Twombly*, 550 U.S. at 557).

Allegations that "concede that other methods of lethal injection the Department could choose would be constitutional" do not permit the Court to draw a reasonable inference that: (1) there is a reasonably available alternative; and (2) the alternative is less likely to create a substantial risk of harm. Plaintiffs' language is simply a naked assertion. Without factual allegations permitting the Court to determine whether the alleged alternative method is

9

reasonably available and less likely to create a substantial risk of harm, Plaintiffs have not stated a plausible claim for violations of the Eighth Amendment.

The Court next considers whether to permit Plaintiffs to amend Count I to properly plead an Eighth Amendment claim consistent with *Lombardi I* and *II*. The Court firmly believes that *Lombardi I* placed Plaintiffs on ample notice of the proper pleading standard for an Eighth Amendment claim. *Lombardi II* simply reinforced existing law. Further, it is unclear to the Court why Plaintiffs would choose to not include the proper language. The Court surmises that either they cannot meet the proper standard or they were improperly convinced that the petition for writ of certiorari would be granted. In the event that the reasoning lies with the latter possibility, and in an effort to give Plaintiffs every opportunity to properly plead their claim, the Court will give Plaintiffs seven days from the date of this Order to amend only Count I of the Second Amended Complaint to comply with the pleading standard described herein.

### c. Count II: Ex Post Facto Claim

Plaintiffs allege Defendants' change to the execution protocol and intended use of compound pentobarbital inflicts a greater quantity of pain and suffering, and a greater likelihood of harm than existed under the preexisting law, such that there is a significant risk of increased punishment in violation of the Ex Post Facto Clause. In their Motion to Dismiss, Defendants contend: (1) the execution protocol is not a rule, but rather an exercise of discretion, and therefore does not apply to changes in modes of procedure that do not alter substantive rights; and (2) Plaintiffs do not have an Ex Post Facto claim independent of the Eighth Amendment.

Ex post facto laws change the law, post-conviction, such that it disadvantages the defendant. *R.W. v. Sanders*, 168 S.W.3d 65, 68 (Mo. 2005); *see also Collins v. Youngblood*, 497 U.S. 37, 41 (1990) ("[T]he constitutional prohibition on ex post facto laws applies only to penal

10

Case 2:12-cv-04209-BP   Document 437   Filed 05/02/14   Page 10 of 24
Appellate Case: 14-2220   Page: 14   Date Filed: 07/29/2014 Entry ID: 4180060 Add. 10

statutes which disadvantage the offender affected by them.") (emphasis omitted); *Williams v. Hobbs*, 658 F.3d 842, 848 (8th Cir. 2011) (an ex post facto claim must allege that a new law or regulation "creates a significant risk of increased punishment.") (quotation omitted).

A change in the execution protocol does not alter Plaintiffs' substantive rights. As the Eighth Circuit articulated in *Lombardi I* regarding Plaintiffs' original Complaint: [4]

> The manner of punishment for capital murder in Missouri at all relevant times, however, has been death by lethal injection or lethal gas, with discretion granted to the Director of the Department of Corrections to establish the method of execution. The plaintiffs were on fair notice of this discretion when they committed their crimes, and the discretion was not later removed . . . . [P]laintiffs do not allege that the Director, in the exercise of his discretion, has employed anything other than the most humane method of execution available. That a former method of execution is no longer available does not mean that adoption of the next best method is an unconstitutional increase in punishment. The punishment—death—has not changed. The prisoners had fair notice of that punishment, and of the Director's discretion to determine the method of execution, when they committed their crimes. Where "only the mode of producing" death has changed, with no allegation of superadded punishment or superior alternatives, the Ex Post Facto Clauses are not implicated.

741 F.3d at 896-97 (internal citations omitted). The same is true for Plaintiffs' Second Amended Complaint. Therefore, Plaintiffs have not stated an Ex Post Facto claim, and dismissal is proper for this count.

### d. Count III: Deliberate Indifference Claim

Plaintiffs allege that Defendants are deliberately indifferent to Plaintiffs' medical need to have a rapid death free of gratuitous pain and suffering by: (1) using compounded drugs that create serious risks of harm; (2) using outdated drugs; and (3) failing to take reasonable measures to address known deviations from Defendants' protocol. Defendants argue that an execution is not a medical procedure and, therefore, Plaintiffs' do not make a plausible claim.

---

[4] Plaintiffs' original Complaint set forth similar allegations, differing only because Plaintiffs then challenged Defendants' use of lidocaine and propofol as the execution drugs.

Case 2:12-cv-04209-BP   Document 437   Filed 05/02/14   Page 11 of 24
Appellate Case: 14-2220   Page: 15   Date Filed: 07/29/2014 Entry ID: 4180060
**Add. 11**

"[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain . . . proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quotation omitted); *see also Nelson v. Campbell*, 541 U.S. 637, 644-47 (2004) (discussing claims for deliberate indifference in a death penalty context). The Eighth Circuit has stated that because the death penalty is "a deliberate act, deliberately administered for a penal purpose," the primary inquiry is whether the death penalty protocol as written would inflict unnecessary pain. *Taylor v. Crawford*, 487 F.3d 1072, 1081 (8th Cir. 2007). However, it has also noted that when the conduct challenged is alleged to be accidental or a deviation from the official procedure, a plaintiff must show an intent to harm or deliberate indifference. *Id.*

Defendants are not addressing Plaintiffs' medical needs when carrying out executions. *See* Section III-e (explaining that medical treatment requires taking measures to ensure physical well-being). Rather, they are following their duties under the law and imposing Plaintiffs' sentences. Moreover, Plaintiffs have not properly pled an Eighth Amendment claim and, therefore, they have not pled that the protocol as written inflicts unnecessary pain in violation of the Eighth Amendment. Plaintiffs only have a right to be free of unnecessary pain and suffering, not to be free from all pain. *See Clemons v. Crawford*, 585 F.3d 1119, 1125 (8th Cir. 2009). As such, Plaintiffs fail to state a deliberate indifference claim, and dismissal is proper for this count.

### e.  Count IV: Medical Malpractice Claim

Plaintiffs allege that Defendants M2, M3, M5, The Apothecary Shoppe, Analytical Research Laboratories, and all John Does defendants who are healthcare providers or allegedly functioning as such are committing medical malpractice by administering, or aiding and abetting in the administration of, substandard drugs. Defendants again argue that an execution is not a

12

medical procedure and, therefore, Plaintiffs have not stated a claim upon which relief can be granted.

In Missouri, a claim for medical malpractice requires a showing that: "(1) an act or omission of the defendant failed to meet the requisite medical standard of care; (2) the act or omission was performed negligently; and (3) the act or omission caused the plaintiff's injury." *Mueller v. Bauer*, 54 S.W.3d 652, 656 (Mo. Ct. App. 2001). Missouri has defined medical treatment for purposes of medical malpractice claims as "measures necessary for the physical well being of the patient" and "covering all the steps taken to effect a cure of an injury or disease[,] including examination and diagnosis as well as application of remedies." *Cole v. Ferrell-Duncan Clinic*, 185 S.W.3d 740, 744-45 (Mo. Ct. App. 2006) (quotations and emphasis omitted).

Plaintiffs are not receiving medical treatment that would give rise to a medical malpractice claim because Plaintiffs have not alleged Defendants are taking measures to ensure their physical well-being or affect a cure for an injury or disease. In fact, Plaintiffs allege Defendants are doing the opposite in carrying out executions. Therefore, Plaintiffs fail to state a medical malpractice claim, and dismissal is proper for this count.

### f. Count V: Intentional Infliction of Emotional Distress

Plaintiffs allege Defendants are intentionally or recklessly engaging in extreme and outrageous conduct by compounding, dispensing, and administering compounded pentobarbital. Specifically, Plaintiffs allege Defendants are intentionally and offensively touching Plaintiffs without their consent, and intend to cause pain and suffering or are deliberately indifferent to their pain and suffering, causing emotional distress to Plaintiffs due to the prospect of a painful death. Defendants argue they are carrying out lawful executions in accordance with their duties

Case 2:12-cv-04209-BP   Document 437   Filed 05/02/14   Page 13 of 24
Appellate Case: 14-2220   Page: 17   Date Filed: 07/29/2014 Entry ID: 4180060 **Add. 13**

under state law, and such conduct cannot support a claim for intentional infliction of emotional distress.

To state a claim for intentional infliction of emotional distress in Missouri, a plaintiff must plead: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; and (3) the conduct was the cause of severe emotional distress. *Hyatt v. Trans World Airlines, Inc.*, 943 S.W.2d 292, 297 (Mo. Ct. App. 1997). For the first element, a plaintiff must plead that defendants' "sole intent in acting was to cause emotional distress." *Kan. City Laser, Inc. v. MCI Telecomm. Corp.*, 252 Fed. App'x. 100, 104 (8th Cir. 2006) (quoting *Cent. Mo. Elec. Coop. v. Balke*, 119 S.W.3d 627, 636 (Mo. Ct. App. 2003)). For the second element, extreme and outrageous conduct is defined as conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Gibson v. Brewer*, 952 S.W.2d 239, 249 (Mo. 1997) (quotation omitted). Moreover, causation requires pleading that the alleged emotional distress is "medically diagnosable and medically significant." *Kan. City Laser, Inc.*, 252 Fed. App'x. at 103-04 (quoting *Hendrix v. Wainwright Indus.*, 755 S.W.2d 411, 412 (Mo. Ct. App. 1988)).

First, Plaintiffs have not sufficiently pled that Defendants' sole intent in executing Plaintiffs is to inflict emotional distress. Second, Defendants' conduct is not extreme or outrageous, as they are carrying out their duties under state law. They cannot be engaging in conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community," because their acts were contemplated and implemented by the state legislature. *Gibson*, 952 S.W.2d at 249. Third, Plaintiffs have failed to plead that the emotional distress they

14

suffer is medically diagnosable or medically significant. To the extent that Plaintiffs allege a claim for negligent infliction of emotional distress, it also fails because Defendants are not acting negligently but rather carrying out their duties under state law. *See Jarrett v. Jones*, 258 S.W.3d 442, 446 (Mo. 2008) (discussing negligent infliction of emotional distress). Therefore, Plaintiffs have failed to state a claim for intentional or negligent infliction of emotional distress, and dismissal is proper for this count.

### g. Count VI: Separation of Powers Claim

Plaintiffs allege that Defendant Lombardi has acted beyond the discretion afforded to him under Mo. Rev. Stat. § 546.720.2. Specifically, Plaintiffs allege that the new protocol's redefinition of the execution team to include testing laboratories, as well as the compounding pharmacy and pharmacist, was an exercise in law-making power that the General Assembly did not confer on Defendant Lombardi. As such, Plaintiffs allege a violation of Missouri's separation of powers guaranty. Defendants argue Plaintiffs do not sufficiently plead this claim, and urge the Court to dismiss this claim as it did in the original Complaint. Plaintiffs contend that this separation of powers claim is radically different from the one pled in the original Complaint because it regards Defendant Lombardi's discretion to choose the execution team under Mo. Rev. Stat. § 546.720.2.[5] Plaintiffs also contend that the Court's prior holding that this statute did not "prohibit the disclosure of identities of the compounding pharmacist, investigative laboratory, and prescribing physician," (Doc. 230), shows they sufficiently plead this claim.

"[T]he doctrine of separation of powers may be violated when one branch assumes a power that more properly is entrusted to another." *State Auditor v. Joint Comm. on Legislative Research*, 956 S.W.2d 228, 231 (Mo. 1997) (internal marks and quotation omitted). However,

---

[5] In the original Complaint, Plaintiffs alleged a separation of powers claim because the legislature had unconstitutionally delegated their authority to choose the execution drug to Defendant Lombardi under Mo. Rev. Stat. § 546.720.1.

the power of Missouri's state legislature is plenary. *Bergman v. Mills*, 988 S.W.2d 84, 89 (Mo. Ct. App. 1999) ("except for restrictions imposed by the Missouri constitution and statutes enacted by the General Assembly, the power of the state legislature is unlimited and practically absolute."). While the legislature's power to make laws may not be delegated, *Akin v. Dir. of Revenue*, 934 S.W.2d 295, 299 (Mo. 1996), it does have the power to delegate its authority, "even that which involves an exercise of discretion." *Bergman*, 988 S.W.2d at 89. An unconstitutional delegation to make law "involves a discretion as to what the general law will be," whereas a constitutional delegation of authority involves "conferring an authority or discretion as to how the law shall be executed." *Akin*, 934 S.W.2d at 299.

Here, the Missouri legislature properly delegated its authority to choose members of the execution team to Defendant Lombardi. Defendant was not delegated any law-making power to determine what the general manner of execution will be, or whether to enact or repeal Mo. Rev. Stat. § 546.720. Rather, Defendant has only the discretion to pick members of the execution team. Defendant's decision to add the testing laboratory, compounding pharmacy, and pharmacist to the execution team is a constitutional exercise in discretion as to how Mo. Rev. Stat. § 546.720, the law governing the manner of Missouri's executions, will be carried out. This decision does not exceed Defendant's delegated authority and is not engaging in law-making, so it is thus not a violation of the separation of powers guaranty. Therefore, Plaintiffs have failed to state a separation of powers claim, and dismissal is proper for this count.

### h. Count VII: Due Process Claim

Plaintiffs allege that Defendants' recent successive changes to the execution protocol and setting of execution dates shortly thereafter has denied them a reasonable opportunity to be heard and access to the courts in violation of the Due Process Clauses of the Missouri Constitution and

the Fifth and Fourteenth Amendments of the United States Constitution. Defendants argue these changes were necessary due to supply interruptions and threats of boycotts by death penalty opponents and, thus, do not violate Plaintiffs' due process rights. Additionally, Defendants contend that *Williams v. Hobbs*, 658 F.3d 842 (8th Cir. 2011), which rejected a similar access-to-the-courts claim, is controlling. Plaintiffs argue *Williams* is distinguishable because the director in that case made no changes to the execution protocol and the plaintiffs' claim was based purely on speculation as to what violations might occur if any changes to the protocol were implemented.

Due process ensures "the right to (a) notice, (b) a meaningful opportunity to be heard, and (c) a fair and impartial process which is appropriate to the nature of the case." *Gross v. Carter*, 265 F. Supp. 2d 995, 1001 (W.D. Ark. 2003) (citing *LaChance v. Erickson*, 522 U.S. 262, 266 (1998)). While prisoners "have a constitutional right of access to the courts," the Due Process Clause does not "enable the prisoner to discover grievances, and to litigate effectively once in court." *Williams*, 658 F.3d at 851-52 (quotations and emphasis omitted). Specifically, the right to access to the courts affords only "the capability of bringing contemplated challenges to sentences or conditions of confinement[.]" *Lewis v. Casey*, 518 U.S. 343, 356 (1996). "[I]mpairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.* at 355 (emphasis omitted).

While Defendants' changing of the protocol and setting execution dates close in time to those changes may have hindered Plaintiffs' ability to discover grievances and effectively litigate any challenge to the protocol, Defendants have not obstructed Plaintiffs' capability to file a suit. This lawsuit itself is evidence of Plaintiffs' ability to challenge the protocol. Additionally, Plaintiffs' misinterpret *Williams*. Plaintiffs' argument is based on the court's Ex Post Facto

Case 2:12-cv-04209-BP   Document 437   Filed 05/02/14   Page 17 of 24
Appellate Case: 14-2220     Page: 21     Date Filed: 07/29/2014 Entry ID: 4180060    Add. 17

analysis in *Williams*, which differs from and was not incorporated into the Eighth Circuit's access-to-the-courts discussion. In *Williams*, the Eighth Circuit specifically held that the plaintiffs' ability to bring a lawsuit to challenge the state's execution proceedings belied their claim, in that it showed they still had access to the courts to challenge the execution protocol even though the protocol was not disclosed to them. *Id.* at 852 (also noting *Giarratano v. Johnson*, 521 F.3d 298, 305-06 (4th Cir. 2008), where a prison system's outright refusal to provide a medical protocol did not make a prisoner's challenge impossible, but rather "just made it more difficult."). The same circumstances exist here. Therefore, Plaintiffs fail to state a plausible due process claim, and dismissal is proper for this count.

### i. Count VIII: Equal Protection Claim

Plaintiffs allege Defendants' failure to strictly follow the execution protocol denies them equal protection of the laws and deprives them of life and liberty without due process of the law. Plaintiffs specifically allege that by moving Plaintiffs from their holding cells to the execution chamber while there is pending legal activity that would prevent the executions, Defendants have failed to follow the protocol and affected their Eighth Amendment rights. Defendants argue Plaintiffs have implausibly read the protocol. They contend the written procedures allow the Director of the Department of Corrections to authorize whether an execution should move forward despite the existence of pending legal activity.

A deviation from an execution protocol burdens or affects a prisoner's equal protection rights when it violates a "core provision" of an execution procedure or protocol. *See In re Ohio Execution Protocol Litig.*, 840 F. Supp. 2d 1044, 1054-55 (S.D. Ohio 2012). Core provisions are those pertaining to properly administering and carrying out the executions of inmates, such as: (1) preparation of the execution drugs; (2) preparation of the inmate for administration of the

18

**Add. 18**

drugs; (3) the manner of administration of the drugs; and (4) who participates in the execution. *Cooey v. Kasich*, 801 F. Supp. 2d 623, 645-50 (S.D. Ohio 2011); *see also In re Ohio Execution Protocol Litig.*, 840 F. Supp. 2d 1044 (holding defendants did not substantially comply with the execution procedure for violations similar to those alleged in *Cooey*).  Additionally, a viable Equal Protection claim requires "an actual pattern of treating prisoners differently in ways that did affect the risk of pain to which they would be subjected, and therefore the risk of being subjected to cruel and unusual punishment."  *Towery v. Brewer*, 672 F.3d 650, 660 (9th Cir. 2012) (emphasis omitted).

Plaintiffs have failed to state an Equal Protection claim.  Moving inmates while there is pending legal activity is not a core provision of the written procedures that would constitute a "significant" change of the execution protocol.  *See, e.g.*, *Powell v. Thomas*, 643 F.3d 1300, 1304-05 (11th Cir. 2011) (discussing changes in protocol with regard to a statute of limitations bar for Eighth Amendment claims and concluding that substituting the lethal injection drug did not constitute a significant change in the execution protocol).  Moreover, Defendants' failure to follow the provision regarding moving inmates to the execution chamber does not affect Plaintiffs' Eighth Amendment rights, as it does not affect the risk of pain to which Plaintiffs may be subjected.  *Towery*, 672 F.3d at 660 ("Treating one similarly situated prisoner differently from another with regard to punishment does not inherently impact the right to be free of cruel and unusual punishment[.]").  Deviations from the protocol in the manner alleged by Plaintiffs do not violate a fundamental right, and Plaintiffs have not suffered a violation of their Equal Protection rights.  *See Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976) (when there is no interference with fundamental rights sufficient to trigger strict scrutiny, there is no Equal Protection claim).

Therefore, Plaintiffs have failed to state an Equal Protection claim, and dismissal is proper for this count.

### j. Count IX: MAPA Claim

Plaintiffs allege Defendants have violated numerous laws that are remediable under MAPA. Specifically, they allege: (1) Defendants violate the Drug Quality and Security Act, Oklahoma pharmacy regulations, and Missouri pharmacy regulations by making and using compounded pentobarbital with non-FDA approved ingredients; (2) Defendants' solicitation, provision, and acceptance of a prescription for pentobarbital violates the Controlled Substances Act ("CSA") and the Food, Drug and Cosmetic Act ("FDCA"); and (3) Defendants' addition of the compounding pharmacy and other companies, such as execution drug suppliers and the testing laboratory, to the execution team violates the Missouri and United States Constitutions. Plaintiffs further allege the foregoing conduct is unlawful, unreasonable, arbitrary or capricious, or involves an abuse of discretion. Defendants argue Plaintiffs fail to state a claim because the FDCA, CSA, and Missouri pharmacy regulations are not provisions that might be privately enforced in a civil rights suit, and the provisions do not apply in the context of lawful executions.

Under MAPA, a court may review a decision by an agency or board in a contested case. *Krentz v. Robertson*, 228 F.3d 897, 904 (8th Cir. 2000); Mo. Rev. Stat. § 536.150. A contested case is one where a proceeding is held and the agency determined the "legal rights, duties or privileges" of any person. *Krentz*, 228 F.3d at 904.

While MAPA does allow for judicial review of an agency or board's decision or enforcement of a regulation, Plaintiffs have not pled that the Missouri or Oklahoma Boards of Pharmacy have made any decisions or taken any enforcement action that this Court would have jurisdiction to review. Aside from reviewing Plaintiffs' complaint, the Missouri Board of

20

Case 2:12-cv-04209-BP   Document 437   Filed 05/02/14   Page 20 of 24
Appellate Case: 14-2220   Page: 24   Date Filed: 07/29/2014 Entry ID: 4180060 **Add. 20**

Pharmacy did not hold a hearing or make any decision determining Plaintiffs' legal rights, duties or privileges; rather, they declined to take any further action regarding the compounding pharmacies. (Doc. 338-39.) Moreover, the Missouri Board of Pharmacy noted that it "does not have jurisdiction over entities that obtain medication, but only over the people and entities that dispense or distribute prescriptions in [Missouri]." (*Id.*) Similarly, the Oklahoma Board of Pharmacy would never make a determination regarding Plaintiffs' legal rights, duties, or privileges, as it only has jurisdiction to regulate pharmacies and pharmacists. Therefore, their decisions are not reviewable by this Court. Moreover, both the Missouri Supreme Court and Oklahoma Supreme Court have held that their state's legislatures did not intend the state's respective administrative procedures acts to extend to the operating procedures of the Department of Corrections. *Middleton v. Mo. Dept. of Corr.*, 278 S.W.3d 193, 195-96 (Mo. 2009); *Lockett v. Evans*, 2014 WL 1632235, *4 (Okla. 2014).

Neither the CSA nor the FDCA create a private right of action, as Congress did not explicitly provide one or intend to imply one in either act. *See Ringo v. Lombardi*, 2010 WL 3310240, *2 (W.D. Mo. Aug. 19, 2010) (citing *Buckman Co v. Plaintiff's Legal Comm.*, 531 U.S. 341, 349 (2001) (stating the FDCA does not create a private cause of action) and *McCallister v. Purdue Pharma L.P.*, 164 F. Supp. 2d 783, 793 (S.D.W.Va. 2001)). Moreover, courts have held that when a plaintiff seeks a declaratory judgment that would cease alleged violations of the CSA and FDCA, it constitutes a prohibited private enforcement action. *Durr v. Strickland*, 2010 WL 1610592, *4 (S.D. Ohio Apr. 15, 2010) (stating that "the only injury that the declaratory relief sought here actually informs is whether defendants would be acting in technical violation of federal law" and potentially subjected defendants to federal charges). Here, Plaintiffs are requesting the Court find that Defendants are violating the FDCA and the

21

CSA. Such a decision would constitute private enforcement of statutes that do not have a private right of action. Additionally, Missouri statutes and regulations regarding pharmacies do not provide for enforcement of those regulations by private individuals, and so the Court can similarly conclude that the legislative intent was to leave enforcement of violations of Missouri's pharmacy regulations to its Board of Pharmacy. *See Mo. Hosp. Ass'n*, 731 S.W.2d at 264 (analyzing Missouri pharmacy regulations and related statutes to determine the legislature did not intend Chapter 338 of Missouri's Revised Statutes bestow authority to regulate hospital practices and procedures).

With regards to whether the alleged conduct is unconstitutional, unlawful, unreasonable, arbitrary, or capricious, or involves an abuse of discretion, the Court has previously concluded that this is not a contested case, as no board or agency has rendered a decision affecting Plaintiffs' legal rights, duties, or privileges. *See* Mo. Rev. Stat. § 536.150.1. Thus, the alleged conduct is not reviewable by this Court under MAPA. Therefore, Plaintiffs have failed to state a MAPA claim, and dismissal is proper for this count.

### k. Count X: First Amendment Claim

Plaintiffs' last claim alleges that Defendants violated their Missouri and United States constitutional rights, as well as those of the public, the press, colleagues and patients of health professionals who are execution team members, and trade and professional associations, to: (1) access the identities of execution team members; (2) freedom of expression with that information; and (3) petition the government for redress of grievances with that information. Plaintiffs argue that the identities of persons involved in Missouri's executions are relevant to the "evolving standards of decency" within the meaning of the Eighth Amendment. Specifically, they contend Defendants' failure to disclose identities prevents Plaintiffs and the public from

forming and expressing opinions about the execution team and Missouri's execution methods. The Court concludes that Plaintiffs' claim fails for the following reasons.

First, Plaintiffs seek access to government-held information, in order to later use that information to petition the government and engage in expression regarding Missouri's execution protocol. However, Plaintiffs set forth no binding authority suggesting they have a right to access the otherwise confidential identities of execution team members. Further, Plaintiffs are not in lawful possession of this information, or in the business of publishing and publicizing such information, and did not have to cease disseminating once-public information to comply with Mo. Rev. Stat. § 546.720. "[T]his is not a case in which the government is prohibiting a speaker from conveying information that the speaker already possesses." *Los Angeles Police Dep't v. United Reporting Pub. Corp.*, 528 U.S. 32, 40-41 (1999) (finding plaintiff could not raise a facial challenge to California statute limiting access to arrestee addresses to commercial users, and plaintiff's claim is properly analyzed as a content-based restriction on access to government information, not on protected speech); *cf. Sorrell v. IMS Health Inc.*, 131 S. Ct. 2653, 2665-66 (2011) (finding Vermont's statute restricting sale, disclosure, and use of pharmacy records revealing prescribing practices of individual doctors was a content- and speaker-based "restriction on access to information in private hands" that burdened protected speech in violation of the First Amendment). Plaintiffs have thus not properly pled that they have an initial right to access the identities of the execution team, or that their rights to speech or expression are implicated under the circumstances of this case. *Sorrell*, 131 S. Ct. at 2665-66 ("An individual's right to speak is implicated when information he or she possesses is subjected to restraints on the way in which the information might be used or disseminated.") (internal quotation omitted).

Similarly, the right to petition the government is not absolute, *see McDonald v. Smith*, 472 U.S. 479, 484-85 (1985), and this claim hinges on Plaintiff's failed right-to-access and expression claims. In addition, Plaintiffs have not shown they may bring these claims on behalf of parties not before the Court—such as the press, colleagues, and patients of health professionals who are execution team members, or trade and professional associations—for circumstances not before the Court.

Second, Plaintiffs fail to plead a remedy redressing any of these alleged First Amendment violations. Plaintiffs request that the Court declare their First Amendment rights were violated, and as a result provide injunctive relief preventing defendants from executing them under the current lethal-injection protocol. However, even if accepted as pleaded, this count does not entitle Plaintiffs to this requested relief, nor would this relief adequately and properly redress wrongs under the First Amendment.

Therefore, Plaintiffs fail to state a First Amendment claim for which relief may be granted, and dismissal is proper for this count.

## IV. Conclusion

Accordingly, Defendants' Motion to Dismiss, (Doc. 354), is **GRANTED** for Counts II through X. The Court **DEFERS RULING** on Count I. Plaintiffs are permitted to amend only Count I to comply with the pleading standard described herein within seven (7) days of the date of this Order. Further, because no viable claims are currently pending before the Court, all discovery is **STAYED**.

**IT IS SO ORDERED**.

/s/ Beth Phillips
BETH PHILLIPS, JUDGE
UNITED STATES DISTRICT COURT

DATE: May 2, 2014

24

# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## CENTRAL DIVISION

DAVID ZINK, *et al.*,            )
                                  )
          Plaintiffs,      )
                                  )
       v.                  )     Case No. 12-4209-CV-C-BP
                                  )
GEORGE A. LOMBARDI,      )
                                  )
          Defendants.     )

## ORDER

This matter comes before the Court on Plaintiffs' Response to the Court's Order of May 2, 2014. (Doc. 442.) On May 2, 2014, the Court entered an Order dismissing Counts II through X of Plaintiffs' Second Amended Complaint for failure to state viable claims. (Doc. 437.) The Court also concluded that Plaintiffs failed to properly plead Count I, their Eighth Amendment claim, as they did not provide a known and feasible alternative method of execution. (*Id.*, pp. 7-10.) However, the Court permitted Plaintiffs to amend Count I to comply with the proper pleading standard. (*Id.*, p. 10.)

On May 16, 2014, Plaintiffs filed their Response. Plaintiffs did not re-plead their Eighth Amendment claim; rather, they stated:

> Plaintiffs respectfully disagree with the Court's ruling that Plaintiffs must propose an alternative means of execution in order for their Eighth Amendment claim to be viable, and Plaintiffs decline to do so. Unless the Court has changed its view, Plaintiffs respectfully request that the Court resolve the remainder of the motion to dismiss so that Plaintiffs may promptly pursue appropriate appellate remedies.

(Doc. 442, p. 3.) The Court has not changed its view. Plaintiffs' Eighth Amendment claim, as it stands now, fails to properly plead a known and feasible alternative. (*See* Doc. 437, pp. 7-10.)

Because Plaintiffs fail to state a viable Eighth Amendment claim and decline to amend their pleadings, dismissal is proper at this time.

Accordingly, Count I of Plaintiffs' Second Amended Complaint is hereby **DISMISSED**. Therefore, Defendant's Motion for Protective Order, (Doc. 397); Plaintiffs' Motion for Leave to File Surreply, (Doc. 419); Richard Strong's Motion to Intervene, (Doc. 418); and Marcellus Williams' Motion to Intervene, (Doc. 421), are **DENIED as moot**. This case is hereby **DISMISSED**.

**IT IS SO ORDERED.**

/s/ Beth Phillips
BETH PHILLIPS, JUDGE
UNITED STATES DISTRICT COURT

DATE: May 16, 2014

2

Case 2:12-cv-04209-BP   Document 443   Filed 05/16/14   Page 2 of 2
Appellate Case: 14-2220   Page: 30   Date Filed: 07/29/2014 Entry ID: 4180060 **Add. 26**

**CERTIFICATE OF SERVICE**

I hereby certify that on July 28, 2014, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:

Mr. Michael J. Spillane
Office of the Attorney General
P.O. Box 899
Jefferson City, MO 65101

/s/ Joseph W. Luby
Joseph W. Luby

Attorney for Appellants