# UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT

_____

## 14-2220
_____

## DAVID S. ZINK,
### et al., Appellants,

### v.

## GEORGE LOMBARDI,
### et al.,
### Appellees,

**On Appeal from the United States District Court for the Western District of Missouri, Central Division**

_____

## APPELLEES' BRIEF
_____

**CHRIS KOSTER**
**Attorney General**

**MICHAEL SPILLANE**
**Assistant Attorney General**
**Missouri Bar No. 40704**

**SHAUN MACKELPRANG**
**Assistant Attorney General**
**Missouri Bar No. 49627**
**P.O. Box 899**
**Jefferson City, MO 65102**
**Telephone: (573)751-3321**
**Facsimile: (573)751-3825**

**COUNSEL FOR APPELLEES**

# TABLE OF CONTENTS

TABLE OF CONTENTS ..............................................................i

TABLE OF AUTHORITIES.....................................................iii

STATEMENT OF THE CASE ................................................ 1

STANDARD OF REVIEW.......................................................9

ARGUMENT ......................................................................... 11

    I.    The district court correctly dismissed Plaintiffs' Eighth Amendment claim because Plaintiffs failed to adequately plead that execution under the planned protocol was "sure or very likely" to cause him "needless suffering," and that a "feasible, readily implemented alternative" existed that would "significantly reduce a substantial likelihood of severe pain." ........................................................11

        A. Plaintiffs did not demonstrate that Missouri's execution protocol is sure or very likely to cause needless suffering......................................................... 12

        B. Plaintiffs did not identify any feasible, readily implemented alternative to Missouri's method of execution that will significantly reduce a substantial likelihood of severe pain. .......................... 17

    II.   Plaintiffs' First Amendment claim did not state a plausible claim on which relief can be granted. ...................25

III.   The Food Drug and Cosmetic Act (FDCA) and Controlled Substances Act (CSA) claim failed to state a plausible claim on which relief can be granted. ................ 32

IV.   Plaintiffs' Ex Post Facto Clause claim failed to state a plausible claim on which relief can be granted. ................ 37

V.   Plaintiffs' Due Process Clause claim failed to state a plausible claim on which relief can be granted. .................. 42

VI.   Plaintiffs' deliberate indifference to medical needs claim did not state a plausible claim on which relief can be granted. .................................................................... 47

VII.   Plaintiffs' Equal Protection Clause claim did not state a plausible claim on which relief can be granted. ................................................................................ 50

CONCLUSION ........................................................................ 55

CERTIFICATE OF SERVICE AND COMPLIANCE ............................ 56

# TABLE OF AUTHORITIES

## Cases

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................. 9, 10

*Baze v. Rees*, 553 U.S. 35 (2008) .................................................... passim

*Beaty v. Brewer*, 649 F.3d 1071 (9th Cir. 2011) ...................................... 43

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .............................. 9

*Benton v. Merrill Lynch and Co.,* 524 F.3d 866 (8th Cir. 2008) .............. 9

*Brewer v. Landrigan*, 131 S.Ct. 445 (2010) .......................................... 14

*Buckman Co. v. Plaintiffs' Legal Comm.,* 531 U.S. 341 (2001) ............. 34

*California First Amendment Coalition v. Woodford,*

    299 F.3d 868 (9th Cir. 2002) .................................................. 28, 29

*Clemons v. Crawford*, 585 F.3d 1119 (8th Cir. 2009) ....................... 14, 43

*Cooey v. Kasich*, 801 F. Supp.2d 623 (S.D. Ohio 2011) .................... 50, 51

*Dobbert v. Florida*, 432 U.S. 282 (1977) .......................................... 40, 41

*Durr v. Strickland*, 2010 WL 1610592 (S.C. Ohio April 15, 2010),

    *aff'd*, 602 F.3d 788 (6th Cir. 2010) ................................................. 33

*Gander v. Mountain Cov. Cabala's, Inc.,*

    540 F.3d. 827 (8th Cir. 2008) ........................................................ 19

*Garner v. Jones*, 529 U.S. 244 (2000) ............................................... 39, 40

*Gonzales v. Oregon*, 546 U.S. 243 (2006) ................................................. 35

*Gregory v. Ashcroft*, 501 U.S. 452 (1991) ................................................. 35

*Hamdi v. Rumsfield*, 542 U.S. 507 (2004) .............................................. 45

*Helling v. McKinney*, 509 U.S. 25 (1993) ................................................. 47

*Hill v. McDonough*, 547 U.S. 573 (2006) .................................................. 18

*Hornbuckle v. Groose,* 106 F.3d 253 (8th Cir. 1997) .............................. 44

*In re Lombardi*, 741 F.3d 888 (8th Cir. 2014) ............................... passim

*In re Lombardi*, 741 F.3d 903 (8th Cir. 2014) .................................. 18, 19

*In re Ohio Execution Protocol Litig.*,

    840 F.Supp.2d 1044 (S.D. Ohio 2012) .................................... 50, 51

*Jones v. Hobbs*, 745 F. Supp. 886 (E.D. Ark. 2010) ............................... 33

*Kentucky Department of Corrections v. Thompson*,

    490 U.S. 454 (1989) ....................................................................... 45

*Lewis v. Casey*, 518 U.S. 343 (1996) ........................................................ 42

*Louisiana ex rel. Francis v. Resweber*, 329 U.S. 459 (1947) ................. 15

*Malloy v. South Carolina*, 237 U.S. 180 (1915) ..................................... 41

*Mathews v. Eldridge,* 424 U.S. 319 (1976) .............................................. 45

*Middleton v. Missouri Dep't of Corrections*,

    278 S.W.3d 193 (Mo. 2009) .......................................................... 38

*Miller v. Florida*, 482 U.S. 423 (1977) ................................................... 40

*Nixon v. Municipal League*, 541 U.S. 125 (2004) ................................... 35

*Oregon v. Ashcroft*, 368 F.3d 1118 (9th Cir. 2004) ........................... 34, 36

*Owens v. Hill*, 758 S.E.2d 794 (Ga. 2014) ...................................... passim

*Powell v. Thomas*, 643 F.3d 1300 (11th Cir. 2011) ................................ 51

*Press Enterprise Company v. Superior Court of California*

    *for the County of Riverside*, 478 U.S. 1 (1986) ............................... 27

*Ringo v. Lombardi*, 677 F.3d 793 (8th Cir. 2012) ................................... 38

*Ryan v. Wood*, 2014 WL 3563348 (9th Cir. July 21, 2014),

    *vacated* 2014 WL 3600362 (U.S. July 22, 2014) ............................ 30

*Sells v. Livingston*, 750 F.3d 478 (5th Cir. 2014) .................................. 44

*Sepulvado v. Jindal*, 729 F.3d 413 (5th Cir. 2013) ................................ 43

*State v. Lawhorn*, 762 S.W.2d 820 (Mo. 1988) ....................................... 40

*Towery v. Brewer*, 672 F.3d 650 (9th Cir. 2012) ............................... 51, 54

*Valle v. Singer*, 655 F.3d 1223 (11th Cir. 2011) .................................... 43

*Wellons v. Commissioner*, 754 F.3d 1260 (11th Cir. 2014) ......... 16, 28, 43

*West v. Ray*, 2010 WL 3825672 (N.D. Tenn. Sept. 24, 2010) ................. 33

*Whitaker v. Livingston*, 732 F.3d 465 (5th Cir. 2013) ........................... 16

*Williams v. Hobbs*, 658 F.3d 842 (8th Cir. 2011) .............................. 42, 43

**Statutes**

21 U.S.C. §337(a) ................................................................ 34

Mo. Rev. Stat. § 536.150 (2000) ................................. 32, 33

Mo. Rev. Stat. § 546.720 (1988) ....................................... 37

Mo. Rev. Stat. § 546.720 (2013) ....................................... 37

**Rules**

Fed. R. Civ. Pro. 12(b)(6) ................................................... 9

Fed. R. Civ. Pro. 8(a) .......................................................... 9

**STATEMENT OF THE CASE**

Plaintiffs in this case are Missouri inmates under sentences of death for murder. The principal defendant is George Lombardi, the Director of the Missouri Department of Corrections. Director Lombardi is the Missouri official principally responsible for developing and implementing procedures used in Missouri executions.

Plaintiffs filed a suit in 2012 challenging Missouri death penalty procedures, specifically the use of propofol in lethal injections (Appendix 16). That complaint raised four claims. These were an Eighth Amendment Claim, a claim based on the Food Drug and Cosmetic Act, an Ex Post Facto Clause retrospective application of law claim, and a separation of powers claim. Defendants removed the case to federal court on August 1, 2012, and moved to dismiss the case for failing to state a claim on which relief can be granted on August 8, 2012 (Appendix 16). On August 20, 2012, Plaintiffs moved to remand the case to state court, and the district court denied the motion to remand on October 9, 2012 (Appendix 16-17). On November 16, 2012, the district court granted the motion to dismiss on the claim alleging a violation of the Food Drug and Cosmetic Act and on the claim alleging a violation of

separation of powers principles. The district court allowed the Eighth Amendment claim and the claim alleging an Ex Post Facto Clause violation to remain in the suit.

Defendants moved to dismiss the case for lack of jurisdiction on October 16, 2013, because Defendants were no longer able to use propofol as an execution chemical, which, in Defendants' view, mooted the suit challenging its use in executions (Appendix 27). The district court denied the motion to dismiss, finding that Plaintiffs' complaint, alleging that the use of propofol in executions violates the Eighth Amendment and the Ex Post Facto Clause, was not moot because the underlying issue was the allegation that Missouri executions violate the Constitution not whether the particular chemical used violates the Constitution, and any event, if the case were dismissed Plaintiffs would just file a new suit challenging the new chemical (Appendix 28-29).

On December 3, 2013, over Defendants' objection, Plaintiffs filed an amended complaint in the same lawsuit, this time alleging that the use of pentobarbital by Missouri in executions would be illegal or unconstitutional (Appendix 31). On December 20, 2013, Defendants

moved to dismiss the Amended Complaint for failure to state a claim on which relief can be granted (Appendix 36).

On January 14, 2014, this Court issued a writ of mandamus protecting the identities of preparers and suppliers of Missouri execution chemicals, finding that the Eighth Amendment and Ex Post Facto Clause claims in the amended complaint failed to state a claim on which relief can be granted, and the information is not relevant to the other claims in the suit. *In re Lombardi*, 741 F.3d 888, 895-97 (8th Cir. 2014) (en banc).

On February 3, 2014, Plaintiffs, with leave of court, filed a Second Amended Complaint (Appendix 55-226). The Second Amended Complaint contained ten claims alleging Missouri's execution procedures using pentobarbital are unconstitutional or otherwise illegal (Appendix 56-58). On February 18, 2014, Defendants moved to dismiss the Second Amended Complaint (Appendix 525-59).

Defendants argued it was error not to dismiss the entire case in November 2012, when the district court dismissed all the claims except the Eighth Amendment and Ex Post Facto Clause claims, which this Court had held in *In re Lombardi*, 741 F.3d at 895-97, did not set out

viable claims. Defendants argued that a case with no viable claims in it cannot continue and be used as a platform to which new claims are added, because at every point a case or controversy must exist in order for a federal court to have jurisdiction (Appendix 531-33). Defendants also argued the district court's jurisdiction ended when Missouri ceased using propofol in October 2013, and the district court should have dismissed the case at that point, rather than holding the case open as a vehicle for Plaintiffs to use in making claims about pentobarbital (Appendix 533-37). Defendants also argued none of Plaintiffs' allegations set out a viable claim on which relief can be granted (Appendix 539-58).

The district court dismissed nine of the ten claims on May 2, 2014, finding the allegations did not state plausible claims on which relief can be granted (Appendix 721-35). The district court also found the Eighth Amendment claim failed to state a plausible claim on which relief can be granted, and that Plaintiffs had been on notice of the proper pleading standard for the claim when they filed the Second Amended Complaint (Appendix 718-21). Nevertheless, the district court gave Plaintiffs the opportunity to amend the Eighth Amendment claim because Plaintiffs

might have erroneously believed the United States Supreme Court would grant certiorari in *In re Lombardi* and modify the standard this Court had explained in that case (Appendix 718).

But on May 16, 2014, Plaintiffs explicitly declined the district court's offer to allow them to amend their Eighth Amendment claim in a manner that might better be able to survive a motion to dismiss (Appendix 736-38). The district court dismissed the case in its entirety later that day (Appendix 742-44). Plaintiffs filed a notice of appeal on May 22, 2014 (Appendix 745-46).

## SUMMARY OF ARGUMENT

The district court acted correctly in dismissing Plaintiffs' Eighth Amendment claim for two interconnected reasons. First, Plaintiffs' complaint does not sufficiently plead that they are likely to needlessly suffer severe pain from Missouri executions by lethal injection. Second, Plaintiffs failed to present a specific, feasible, more humane method of execution as an alternative to the method proposed by the State.

Plaintiffs' First Amendment claim fails to state a plausible claim for three reasons. First, information about execution chemicals is not part of the limited class of information that requires more detailed analysis under the two-pronged test to determine if disclosure is required. Second, there is no longstanding, traditional right of access to information about executioners in general or suppliers of execution chemicals in particular. Third, release of the information would not assist the process of executions but, rather, is intended to, and would, undermine the process.

Plaintiffs' federal statutory claims fail to state plausible claims on which relief can granted for two reasons. First, the statutes Plaintiffs rely on may not be privately enforced. This is not changed by Plaintiffs'

implausible allegation that the Missouri Administrative Procedure Act creates a private right to enforce federal statutes that under federal law may not be privately enforced. Second, the statutes Plaintiffs rely on do not regulate lawful executions.

Plaintiffs' Ex Post Facto Clause claim fails for two reasons. First, the Director of the Missouri Department of Corrections has always had the discretion to choose the execution chemical and this discretion has not changed. Second, the United States Supreme Court has held that changes in the mode of execution do not increase punishment.

Plaintiffs' briefed Due Process Clause claim is not the same claim they presented to the district court; thus, it cannot be asserted here. The district court correctly dismissed the claim presented to it because Plaintiffs were not denied access to the courts and the Due Process Clause does not require access to information about execution chemicals and their suppliers.

Plaintiffs' deliberate indifference to medical needs claim fails because an execution is not a medical procedure. On the contrary, its purpose is to cause death—not to treat illness or injury, or to eliminate an environmental hazard that would eventually cause illness.

Plaintiffs' Equal Protection Clause Claim fails for several reasons. First, the provisions of the execution protocol Plaintiffs raise are not the type of core provisions, dealing with the potential painfulness of an execution, that have ever been held to implicate the Equal Protection Clause. Second, Plaintiffs' claim is based on an implausible and incorrect reading of the Missouri execution protocol that would have the practical effect of ending executions for all inmates except volunteers. Third, Plaintiffs do not even allege that the State provides disparate treatment to certain inmates; rather, they allege only that Missouri misunderstands its own protocol and uniformly treats everyone in accordance with the alleged misunderstanding.

## STANDARD OF REVIEW

A complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. PRO. 8(a). To avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A complaint that fails to satisfy these requirements may be dismissed for failure to state a claim for which relief can be granted. FED. R. CIV. PRO. 12(b)(6). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and formulaic recitation of the elements of a cause of action will not do." *Benton v. Merrill Lynch and Co.,* 524 F.3d 866, 870 (8th Cir. 2008).

To determine whether an action fails to state a claim upon which relief can be granted, a court must engage in a two-step inquiry. First,

the court must identify the allegations in the complaint that are not entitled to the assumption of truth. *Ashcroft v. Iqbal,* 556 U.S. at 680. These include "legal conclusions" and "threadbare recitations of the elements of a cause of action [that are] supported by mere conclusory statements." *Id*. at 678. Second, the court must determine whether the complaint states a plausible claim for relief. *Id*. at 680. This is a "context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 680. The plaintiff is required to plead facts that show more than the "mere possibility of misconduct." A court must review the factual allegations in the complaint to determine if they plausibly suggest an entitlement to relief. *Id*. at 680-82. Here, as discussed below, when Plaintiffs' allegations are viewed in this light, the complaint failed to state a claim for which relief can be granted.

# ARGUMENT

**I. The district court correctly dismissed Plaintiffs' Eighth Amendment claim because Plaintiffs failed to adequately plead that execution under the planned protocol was "sure or very likely" to cause him "needless suffering," and that a "feasible, readily implemented alternative" existed that would "significantly reduce a substantial likelihood of severe pain."**

Writing for a plurality of the Court in *Baze v. Rees*, 553 U.S. 35 (2008), Chief Justice Roberts discussed the standard for evaluating a claim that a proposed method of carrying out a death sentence by lethal injection, absent an allegation that the method is deliberately designed to inflict pain, violates the condemned inmate's Eighth Amendment right to be free from cruel and unusual punishment. *Id.* 49-62. To make such a claim, the condemned prisoner must establish "that the State's lethal injection protocol creates a demonstrated risk of severe pain." *Id.* at 61. Further, "he must show that the risk is substantial when compared to the known and available alternatives." *Id.*[1]

---

[1] Justices Thomas and Scalia, who concurred in the Court's judgment, but did not join the plurality opinion, took a much narrower view of the Eighth Amendment. In their view, "a method of execution violates the Eighth Amendment only if it is deliberately designed to inflict pain . . . ." *Baze*, 553 U.S. at 94 (Thomas, J., concurring in judgment).

Citing *Baze*, this Court has explained that the right to challenge a particular method of execution under the Eighth Amendment is limited to insisting that the State "*change* from one feasible method of execution to another." *In re Lombardi,* 741 F.3d 888, 895 (8th Cir. 2014) (emphasis original). This Court observed that "if a State refuses to adopt a readily available alternative method of execution that would significantly reduce a substantial risk of severe pain, then 'a State's refusal *to change its method* can be viewed as 'cruel and unusual' under the Eighth Amendment.'" *Id.* (emphasis original) (citing *Baze*, 553 U.S. at 52).

Plaintiffs do not set out a plausible claim either that the Missouri execution procedures are sure or very likely to cause severe pain or that that there is a feasible, readily implemented alternative that would substantially reduce the risk of severe pain. To survive a motion to dismiss, Plaintiffs had to do both.

## A. Plaintiffs did not demonstrate that Missouri's execution protocol is sure or very likely to cause needless suffering.

In their original complaint, Plaintiffs alleged that the risk of injection-site pain from a lethal injection using propofol would violate the Eighth Amendment (Appendix 16). Plaintiffs alleged that this type

of pain *routinely occurs* in clinical settings and that in attempts to reduce the pain "no clinically used technique is fully effective." (Appendix 16). In their Second Amended Complaint the Plaintiffs replaced their complaint about the use of propofol in executions with a very different complaint about the use of pentobarbital.

First, Plaintiffs alleged in the Second Amended Complaint that although the Director of the Division of Adult Institutions has indicated by affidavit that executions will use peripheral venous access unless central venous access is medically necessary, the anesthesiologist might arbitrarily choose to use a central vein, and this allegedly has a higher risk of complications (Appendix 84-88). Plaintiffs indicated that in past protocols using other chemicals the anesthesiologist used a central line, but Plaintiffs did not assert that this has ever resulted in the complications they alleged could occur (Appendix 84-88). Plaintiffs' own expert testified that using a central line, as opposed to a peripheral line, would reduce the risk of pain from the injection of propofol. That reason for using a central line no longer exists with the use of pentobarbital.

Plaintiffs speculated that the anesthesiologist will ignore his directions, and use a central line whether or not this is medically

necessary, and this will increase a risk of complications. Plaintiffs did not allege such complications ever occurred in Missouri executions, despite their assertion that a central line was used in the past as the routine method of introducing lethal chemicals. Plaintiffs also did not allege that there was any impropriety in the placement of the intravenous lines in the recent executions of Plaintiffs Franklin, Nicklasson, and Smulls, that occurred before their second amended complaint, or that those executions were anything but rapid and painless. The allegations that Plaintiffs did make with regard to line placement did not come close to setting out a plausible claim under the standard set out in *Baze*, *Brewer v. Landrigan*, 131 S.Ct. 445 (2010)*, Clemons v. Crawford*, 585 F.3d 1119 (8th Cir. 2009), and *In re Lombardi*. In their appeal to this Court, Plaintiffs do not brief issues about a central as opposed to a peripheral line and instead concentrate on issues about pentobarbital (*Zink* Brief 17 – 30).

In their Second Amended Complaint, Plaintiffs did not allege that pentobarbital, if used in an execution, will not, by its nature, result in a rapid and painless death. What Plaintiffs did allege was that if a pharmacist makes a serious mistake in compounding the pentobarbital,

or uses the wrong ingredients, and if a testing laboratory fails to catch the error through accident or incompetence, then something could go wrong with an execution (Appendix 88-111). Plaintiffs' allegations did not make a plausible claim that Missouri's execution procedure is sure or very likely to cause serious illness or needless suffering and give rise to sufficiently imminent dangers. It is not sure or very likely that a series of accidents will occur causing serious illness or needless suffering, or that the alleged suffering will occur imminently. Further, Plaintiffs did not point to any feasible, readily implemented alternative that would substantially reduce a severe risk of pain. Plaintiffs failed to state a plausible claim for relief under *Baze*, *Brewer*, *Clemons*, and *Lombardi*.

Plaintiffs' allegation was merely that an accident, or series of accidents, might occur—which is exactly the type of allegation that the plurality in *Baze* held does not state an Eighth Amendment violation. The *Baze* plurality cited *Louisiana ex rel. Francis v. Resweber*, 329 U.S. 459, 462 (1947), for the proposition that accidents happen for which no one is to blame and that an accident without malevolence does not give rise to an Eighth Amendment violation. *Baze,* 553 U.S. at 50. The

plurality found that even if an isolated mishap were to occur that would not be an Eighth Amendment violation. *Id*. As Chief Justice Roberts wrote, "an isolated mishap alone does not give rise to an Eighth Amendment violation, precisely because such an event, while regrettable, does not suggest cruelty, or that the procedure at issue gives rise to a 'substantial risk of serious harm.'" *Id*.

In short, the claim as presented to the district court did not meet the first prong of the *Baze* test: it did not make a plausible claim that there was a substantial risk of unnecessary suffering resulting from a Missouri execution. *See Owens v. Hill*, 758 S.E.2d 794, 801-03 (Ga. 2014) (holding that the potential difficulties that allegedly might occur in producing pentobarbital for Georgia executions, which are similar to the allegations here, do not set out an Eighth Amendment claim); *Wellons v. Commissioner*, 754 F.3d 1260, 1264-66 (11th Cir. 2014) (rejecting an Eighth Amendment challenge because a claim that pentobarbital might be improperly compounded is insufficient to meet the first *Baze* prong, as well because the inmate did not meet the second prong by alleging an alternative method of execution); *Whitaker v. Livingston*, 732 F.3d 465, 468-69 (5th Cir. 2013) (holding that an Eighth

Amendment challenge to pentobarbital failed both prongs of *Baze* test, and concluding that inmates were really trying to supervise their own executions, which they have no right to do).

**B. Plaintiffs did not identify any feasible, readily implemented alternative to Missouri's method of execution that will significantly reduce a substantial likelihood of severe pain.**

Plaintiffs also did not meet the second prong of the test set out in *Baze* and *Lombardi*, which requires a showing that a substantial risk of unnecessary suffering may be significantly reduced through a feasible, readily implemented alternative method of execution. Instead, Plaintiffs deny the requirement exists (*Zink* Brief 23-30).

Plaintiffs allege that because the United States Supreme Court granted a stay to Plaintiff Bucklew, the Court must have implicitly rejected the idea that an inmate challenging a method of execution must offer a feasible alternative method of execution that significantly reduces a substantial risk of harm (*Zink* Brief 23-25). But that is not so. Plaintiff Bucklew explicitly alleged to the United States Supreme Court that he was offering a feasible alternative method of execution that was specific to his case and his peculiar infirmities; he stated: "Mr. Bucklew has indeed proposed an 'alternative'—and it involves obtaining up-to-

date imaging tests to ascertain the current size, condition and location of his vascular tumors and to ascertain the specific degree to which his airway is obstructed and to evaluate means for addressing the obstruction." (Appendix 821-22). It is inconsistent for Plaintiff Bucklew to tell the United States Supreme Court he was offering an alternative method of execution (or to be more precise, an additional step preceding the execution) in his case, and then for Plaintiff Bucklew and the other Plaintiffs to tell this Court that the grant of a stay to Plaintiff Bucklew shows that the United States Supreme Court found it is unnecessary to propose an alternative method of execution.

Plaintiffs allege this Court overruled its *en banc* holding in *In re Lombardi* when it denied rehearing (*Zink* Brief 26-27). But Plaintiffs ignore the context of the denial of rehearing. On rehearing, this Court found there was no conflict with a United States Supreme Court case cited by Plaintiffs—*Hill v. McDonough*, 547 U.S. 573 (2006)—because Plaintiffs in this case did not allege there was *any* available constitutional method of execution, while the plaintiffs in *Hill* made that minimal allegation. *In re Lombardi*, 741 F.3d 903, 905 (8th Cir. 2014) (*Lombardi II*) (denial of rehearing petition). As a consequence, it

was not necessary in the context of the denial of the petition for rehearing to consider whether conceding the existence of an unspecified, constitutional, alternative method of execution would satisfy the pleading requirements for a viable claim. *Id*. But this Court in its original *en banc* decision held a plaintiff must make "a plausible allegation of a feasible and more humane method of execution." *In re Lombardi*, 741 F.3d at 896. That standard is the law of this case. *Gander v. Mountain Cov. Cabala's, Inc.,* 540 F.3d. 827, 830 (8th Cir. 2008).

Plaintiffs allege that this Court's reading of *Baze* conflicts with United States Supreme Court precedent (*Zink* Brief 29-30). This Court has already rejected the argument that Plaintiffs advance here. In *Lombardi II*, Plaintiffs argued that this Court misread *Baze* in light of *Hill* in requiring that Plaintiffs allege a feasible alternative. *Id.* at 905. This Court was not persuaded, and it distinguished *Hill* by noting that in the earlier case, the plaintiff had alleged "that the challenged procedure presents a risk of pain the State can avoid while still being able to enforce the sentence of lethal injection." *Id*. This Court observed that Plaintiffs in this case had not made such an allegation.

Moreover, a plain reading of *Baze* reveals that, whether with the express intent of overruling *Hill* or not, the Supreme Court concluded that an inmate could not challenge the constitutionality of a method of execution (absent an allegation of a deliberate design to inflict pain) without specifically identifying a feasible alternative. In *Baze*, the Court specifically placed upon the plaintiff the burden of establishing that the risk associated with the current method is substantial "when compared to the known and available alternatives." *Baze*, 553 U.S. at 61. It makes little sense to require a plaintiff to establish that one method is riskier than "known alternatives," but not require the plaintiff to identify what those alternatives are. The Court referred to the manner in which "proffered" alternatives are measured, suggesting that the plaintiffs must put forward their own proposal for comparison against the State's method. *Id*. at 52.

Additionally, the Court emphasized the need for specificity, noting that the *Baze* plaintiffs failed to meet their burden, in part, because they neglected to propose their alternative method to the lower court in the first instance to allow the court to make findings with respect to its feasibility and effectiveness. *Id*. at 56-57. *See also id*. at 67 ("In order to

show that a modification of a lethal injection protocol is required by the Eighth Amendment, a prisoner must demonstrate that the modification would *"significantly* reduce a *substantial risk* of *severe pain."* … Moreover, an inmate should be required to do more than simply offer the testimony of a few experts or a few studies. Instead, an inmate challenging a method of execution should point to a well-established scientific consensus.") (Alito, J., concurring in judgment). The *Baze* standard simply does not work unless the plaintiff specifically identifies an alternative method.

Plaintiffs also argue that it is "unworkable" to require them to propose an alternative method of execution without first requiring Defendants to disclose "the Department's efforts to identify, select, procure, and test execution drugs" (*Zink* Brief 27-29). They assert that they cannot propose an alternative without such information. But this argument simply reflects a self-imposed unwillingness to *look* for any reasonable alternatives. Plaintiffs could propose other drugs and search for drug suppliers if they were interested in finding a reasonable alternative to Missouri's method of execution. The fact that Plaintiffs have not done so is not because they were not given the identity of the

drug suppliers in this case. In short, in proposing an *alternative* method of execution, Plaintiffs do not need to know the suppliers of drugs for use under the current method of execution.

Moreover, the discovery process exists to support a viable claim. Plaintiffs argue they should have a right to discovery in the hope that it will produce something they can use to make a claim. But they have no such right. What Plaintiffs really desire to do is use discovery to find the identity of suppliers and then pressure them not to participate in executions.

In short, it is not difficult to think of a viable Eighth Amendment claim that could be made against various hypothetical methods of execution without having discovery before filing a suit, and it is not difficult to think of alternative methods of execution that could be proposed in such a hypothetical case. Here, Plaintiffs cannot make a viable claim, because Missouri's method of execution complies with the Eighth Amendment, not because they have not been given discovery.

Plaintiffs also argue that the pleading requirements for an Eighth Amendment claim must be changed because pleading a viable claim may have consequences that are not to their advantage, and therefore

counsel allegedly have a conflict of interest that prevents counsel from pleading a viable claim (*Zink* Brief 30). Plaintiffs' essential complaint is that if counsel were to plead the existence of a viable, more humane method of execution, the State might actually use it, increasing Plaintiffs' chances of being executed. It is not difficult to understand why Plaintiffs prefer a system where they need not propose anything and can simply condemn any method of execution that is proposed, even if it addresses their complaints about the current method.

But it is Plaintiffs who must choose whether to bring an Eighth Amendment claim challenging the method of execution. And they must make that choice knowing that bringing the suit may have disadvantages as well as advantages. What Plaintiffs are really saying is that they should be able to tailor the required elements of a claim so that there are no potential disadvantages in bringing the claim, because if they cannot, counsel who represent them in the suit necessarily have a conflict of interest. That is not the law.

A civil suit challenging the constitutionality of a method of execution is not a habeas corpus action seeking to prevent the execution itself. The goal of this litigation is to protect against cruel and unusual

punishment, *i.e.*, to see that Plaintiffs are not subjected to unnecessary pain. It is, therefore, wholly consistent with representing Plaintiffs' interests in this case for Plaintiffs' counsel to propose feasible, alternative methods of execution. And, perhaps not coincidentally, that is what the law requires them to do.

## II.    Plaintiffs' First Amendment claim did not state a plausible claim on which relief can be granted.

Plaintiffs allege that inmates sentenced to death have a First Amendment right to know the identity of pharmacies that compound execution chemicals and the identities of suppliers who supply ingredients to the pharmacies (*Zink* Brief 31). In their First Amended Complaint, Plaintiffs candidly admitted they sought information about the manufacturers and suppliers of execution chemicals in order to subject those manufacturers and suppliers to censures and boycotts, and that they sought information about health care professionals involved in executions to subject them to censure, boycott, decertification, and prosecution (Appendix 31).

Plaintiffs demonstrated the same reasoning and purpose in their Second Amended Complaint, expressing the need to "police the conduct" of health care professionals and suppliers of chemicals (Appendix 190). Plaintiffs alleged that they and their allies were being prevented from "censuring or boycotting them" (Appendix 194). In discussing their desire for the information they seek, Plaintiffs referred to health care professionals involved in the execution process and wrote of "charging

them with criminal offenses" and "de-certifying or otherwise censuring or boycotting them" (Appendix 195).

In short, Plaintiffs seek information in order to cut off supplies of execution chemicals, and to discourage health care professionals from participating in executions. Plaintiffs' pleading was a thinly veiled threat to attack the livelihoods, professional certifications, and even personal liberty, of persons who assist the State in carrying out lawful judgments. As such, Plaintiffs' purpose in seeking the information argues against any right of access to the information.

There is no First Amendment right to know the identity of specific persons or entities that supply execution chemicals. Recently, the Supreme Court of Georgia rejected a similar First Amendment challenge in *Owens v. Hill*, 758 S.E.2d 794, 805-806 (Ga. 2014). In *Owens v. Hill*, the Georgia Supreme Court observed that the First Amendment requires that certain limited forms of government proceedings be open to the public where there has historically been public access, and the access plays a positive role in the functioning of the process. *Id*. at 805 (citing *Press Enterprise Company v. Superior Court of California for the County of Riverside*, 478 U.S. 1, 10-12

(1986)). The court indicated that it would be an "extravagant view" to include the acquisition of execution chemicals in the limited class of government activities that should even be subjected to the two part test in *Press Enterprise*, but that, in any event, the First Amendment claim presented to it failed both prongs of the test. *Owens v. Hill*, 758 S.E.2d at 805.

In analyzing the first prong of the test, the court found that the identities of executioners have historically been protected to shield them from retaliation from relatives of prisoners and members of the community and to provide them peace of mind. *Id*. The court held the same logic applies to those who prepare for executions including those involved in procuring execution chemicals. *Id*. In analyzing the second prong, the court found that there is a significant possibility that absent anonymity, parties necessary to executions would not participate. *Id*. at 805-06. The court cited a Georgia decision noting executions had been made more difficult because of "non-judicial" factors, and another case indicating a Texas compounding pharmacy "was being harassed." *Id*. at 806. The court found that Georgia's execution process is likely made more timely and orderly by confidentiality, that significant private

interests are protected by confidentiality, and that confidentiality plays a positive role in the capital punishment process. *Id.*

The United States Court of Appeals for the Eleventh Circuit reached the same result in *Wellons v. Commissioner*, 754 F.3d 1260, 1266-68 (11th Cir. 2014). The court of appeals rejected an argument that the two-part test in *Press Enterprise* applied and that the inmate had satisfied the test. *Id.*

Here, the district court rejected Plaintiffs' First Amendment claim because (1) Plaintiffs did not properly plead a right of access to the information they seek, nor that their rights of freedom of speech and expression are violated; and (2) the relief they sought—an injunction to prevent their executions—is not proper relief for a First Amendment claim (Appendix 733-35). The court therefore held Plaintiffs failed to state a claim on which relief can be granted. Plaintiffs' claim fails as a matter of law under *Wellons v. Commissioner* and *Owens v. Hill*, and the district court acted correctly in dismissing it.

Plaintiffs principally rely on *California First Amendment Coalition v. Woodford*, 299 F.3d 868 (9th Cir. 2002). But *California First Amendment Coalition* is not on point. That was a case about viewing an

execution from start to finish. The court there found that rather than denying the public the ability to view the entire execution, California could accommodate its interest in the privacy of the execution team by having them wear surgical masks. *Id*.

Here, unlike public access to the execution itself, which the public and the press have historically had access to, *see id*. at 876, Plaintiffs have cited no authority for the proposition that the press and general public have historically been granted access to information identifying the suppliers of lethal-injection drugs or precursor ingredients to those drugs. To the contrary, the identity of executioners (and by extension all members of an execution team) have historically been shielded.

In addition, it is plain that releasing the identity of members of the execution team can undermine a state's ability to carry out its lawful judgments, and, indeed, here, Plaintiffs explicitly seek to reveal the identities of persons who participate in executions in order to discourage participation and undermine the execution process. To the extent that Plaintiffs might suggest that they seek merely to foster public debate, it cannot be said that revealing the identity of specific individuals or entities (as opposed to more general identifying

information about the drug) will foster any beneficial public debate that cannot already be had without further disclosure. The information available now is sufficient for an informed public debate.

Plaintiffs also rely on a decision entering a stay of execution on a similar First Amendment claim in *Ryan v. Wood*, 2014 WL 3563348 (9th Cir. July 21, 2014), *vacated* 2014 WL 3600362 (U.S. July 22, 2014) (*Zink* Brief 36-37). Plaintiffs argue that this Court should be persuaded by the decision of the court of appeals instead of the order of the United States Supreme Court vacating the decision the next day, because the United States Supreme Court might have vacated the decision based on the "mismatch" between the First Amendment claim and the remedy of a stay of execution (*Zink* Brief 36). That argument is particularly unhelpful to Plaintiffs in this case because one of the reasons the district court dismissed their claim was a similar mismatch between the First Amendment claim and the requested remedy of a stay of execution, as opposed to some relief that would provide the information they seek (Appendix 735, finding Plaintiffs failed to plead a remedy that redresses the wrongs they alleged).

Finally, Plaintiffs suggest that there would be a "significant positive effect" on the execution process if they knew the identity of the drug suppliers (*Zink* Brief 34). Plaintiffs point to "recent events in Arizona, Ohio, and Oklahoma" and assert that "secrecy in the preparation of execution chemicals leads at least to the inference that the state lacks adequate safeguards to ensure that executions comport with the Eighth Amendment" (*Zink* Brief 34). But events in those other states—where different chemicals, protocols, and personnel were involved—do not give rise to any inference about Missouri's execution protocol. Plaintiffs do not allege that any of the nine recent executions carried out in Missouri using pentobarbital have been anything but rapid and painless, and they did not allege in their Second Amended Complaint that any of the several Missouri executions carried out between November 2013 and the filing of the Second Amended Complaint in February 2014 were anything but rapid and painless. In short, if there is any inference to be drawn from recent events that have any bearing on Plaintiffs' case, it is that Missouri's execution protocol comports with the Eighth Amendment.

### III. The Food Drug and Cosmetic Act (FDCA) and Controlled Substances Act (CSA) claim failed to state a plausible claim on which relief can be granted.

Plaintiffs argue that Missouri execution procedures violate the FDCA, including recent modifications to the FDCA in the Drug Quality and Security Act of 2013, and the CSA (*Zink* Brief 39-41). Plaintiffs' claim fails for two independent and adequate reasons.

First, the FDCA and CSA are not provisions that may be privately enforced by individuals through a civil rights suit, as opposed to enforcement by the relevant federal government agencies. Second, the provisions simply do not apply in the context of lawful executions as opposed to therapeutic medical procedures in the case of the FDCA and pharmacy regulations, and enforcement actions meant to prevent recreational drug use and addiction in the case of the CSA.

Plaintiffs do not appear to dispute the general principle that it is well established that these federal statutes may not be privately enforced under federal law, and that using the statutes to challenge a method of execution is private enforcement. Instead, Plaintiffs argue that the Missouri Administrative Procedure Act, Mo. Rev. Stat. § 536.150.1 (2000) (MAPA), which allows judicial review of decisions of

administrative officers or bodies such as granting or denying licenses, somehow allows Plaintiffs to privately enforce the CSA and FDCA in state court and that therefore they may privately enforce the statutes in federal court. They may not. As the district court found, the FDCA and CSA are not privately enforceable, and Missouri law does not provide for private enforcement of those provisions (Appendix 722-733).[2]

It is well established that it is contrary to federal law for private individuals to bring suits seeking to use the FDCA or CSA to prevent their lawful execution by State authorities. *See e.g., Jones v. Hobbs*, 745 F. Supp. 886, 888-94 (E.D. Ark. 2010) (holding that it would flout the intent of Congress to allow a declaratory judgment suit by inmates challenging execution procedures under the CSA and the FDCA); *Durr v. Strickland*, 2010 WL 1610592 (S.C. Ohio April 15, 2010), *aff'd*, 602 F.3d 788 (6th Cir. 2010); *West v. Ray*, 2010 WL 3825672 (N.D. Tenn. Sept. 24, 2010) (holding that inmates cannot use the federal statutes to

---

[2] Plaintiffs' reliance on MAPA is misplaced. Section 536.150 of Missouri's Revised Statutes permits a person to contest a decision made by an administrative officer or body that "determin[es] the legal rights, duties or privileges of any person, including the denial or revocation of a license[.]" The department director's chosen method of execution does not determine the legal rights, duties, or privileges of Plaintiffs

challenge lethal injection procedures because that would violate the intent of Congress, and finding that *Durr* stands for that proposition). The clear intent of Congress that the FDCA and CSA be enforced only by the federal executive bars a suit that seeks to enforce the Acts against state officials as well as suits against private individuals. *See* 21 U.S.C. §337(a) (proceedings must be by and in the name of the United States); *Buckman Co. v. Plaintiffs' Legal Comm.,* 531 U.S. 341, 349 n.4 (2001) (statute leaves no doubt it is the federal government rather than private litigants who can sue for non-compliance).

Moreover, the statutes do not regulate executions, and an attempt by Congress to regulate executions would be an exercise of control over an area traditionally left to the states and would alter the usual balance between the states and the federal government. In such a case, the intention of Congress to exercise control over an area traditionally left to the states must be unmistakably clear or it is presumed not to exist. *See Oregon v. Ashcroft*, 368 F.3d 1118, 1124-25 (9th Cir. 2004) (applying a plain statement rule standard of unmistakable clarity to reject a claim that Congress intended that the CSA could be used to regulate physician-assisted suicides using controlled substances even though

such suicides are permitted by Oregon law) *aff'd, Gonzales v. Oregon*, 546 U.S. 243, 274 (2006) (concluding that enforcing the prescription requirements of CSA to ban physician-assisted suicides would intervene in an area traditionally reserved to the states but that it was unnecessary to reach the level of analyzing "clear statement requirements" to reject the claim that the CSA authorizes a ban on physician-assisted suicide); *see also Gregory v. Ashcroft*, 501 U.S. 452, 460-61 (1991) (applying the unmistakable clarity standard to reject the idea that the Age Discrimination in Employment Act applies to state judges in the face of a state statute mandating judicial retirement at age 70); *Nixon v. Municipal League*, 541 U.S. 125 (2004) (using the plain statement rule's requirement of unmistakable clarity in rejecting a claim that the term "any entity" in the Telecommunications Act of 1996 included municipalities that sought to provide telecommunications services).

The plain statement rule controls the mechanics of constitutional legal executions of criminals, because that area has traditionally been left to the states by Congress, and there is no plain statement in the FDCA or CSA stating that the Acts are meant to regulate executions by

lethal injection. The analysis by the Court of Appeals for the Ninth Circuit in *Oregon v. Ashcroft*, in which the court rejected a claim that the CSA could be used to regulate or prohibit physician-assisted suicide, is particularly instructive. *See Oregon v. Ashcroft*, 368 F.3d at 1125 (finding that unless the authorization by Congress is "unmistakably clear," the Attorney General cannot exercise control under the CSA over an area traditionally reserved for state authority, and that Congress has provided no unmistakably clear indication it intended the Attorney General to be able to use the CSA to regulate physician-assisted suicides); *see id.* at 1126 (stating that physician-assisted suicide is an unrelated general medical practice to be regulated by state lawmakers in the first instances and that "We know Congress intended to limit federal authority under the CSA to the field of drug abuse").

In short, Plaintiffs' cannot privately enforce the FDCA or CSA as a means of preventing their executions.

**IV.    Plaintiffs' Ex Post Facto Clause claim failed to state a plausible claim on which relief can be granted.**

Plaintiffs allege that executing them with a different chemical than that in use at the time of their crimes will violate the Ex Post Facto Clause (*Zink* Brief 45-47). The district court dismissed the claim citing this Court's order in *In re Lombardi*, 741 F.3d at 896-97, finding that Plaintiffs' assertion of the same claim in an earlier complaint failed to state a claim on which relief can be granted (Appendix 721-22). This Court's *en banc* rejection of the earlier claim is the law of the case. The claim is also without merit for the reasons discussed below.

The Department of Corrections has had the discretion to choose the lethal chemical or lethal gas used in executions since lethal injection became a means of execution in Missouri. The current version of MO. REV. STAT. § 546.720 (2013), provides for execution "by administration of lethal gas or by means of the administration of lethal injection." The same language existed in § 546.720 in 1988; it was adopted when the Missouri legislature added lethal injection to lethal gas as an alternate means of execution. Missouri inmates have never had a statutory or other right to be executed by any particular lethal chemical so long as the execution complies with the Eighth

Amendment's ban on cruel and unusual punishment. And, here, as discussed above in Point I, there is no substantial risk that Plaintiffs will be subjected to unnecessary suffering. Moreover, Plaintiffs have not alleged that any Missouri execution using pentobarbital has been anything but rapid and painless.

Missouri's execution protocol is not a rule, and it is not subject to the notice and comment procedures that apply to rules. *Middleton v. Missouri Dep't of Corrections*, 278 S.W.3d 193, 195-198 (Mo. 2009). The protocol is, rather, a planned exercise of discretion. It creates no right to be executed by a particular chemical, and it can be changed based on circumstances. Here, Plaintiffs object to the exercise of plenary discretion by the Department of Corrections to carry out executions with a different chemical than was used in earlier cases, but this change was necessary because the previous chemical is unavailable. *See Ringo v. Lombardi*, 677 F.3d 793, 797 (8th Cir. 2012) (noting that Missouri's supply of sodium thiopental has expired, the chemical is no longer manufactured in the United States, and a court has barred its importation). Essentially, Plaintiffs claim that once the Department of Corrections, in its exercise of plenary discretion, uses a particular

chemical in one execution, all condemned prisoners are then entitled to execution by the same instrumentality, and if that is not possible (due to unavailability or some other reason), the State may not carry out Plaintiffs' sentences. That is analogous to arguing that if this Court makes a discretionary ruling in a case involving litigant A, litigant B may claim an entitlement to the same ruling despite different or changed circumstances making an identical ruling inappropriate or impossible.

Citing *Garner v. Jones*, 529 U.S. 244 (2000), Plaintiffs assert, " 'The presence of discretion does not displace the protections of the Ex Post Facto Clause' " (*Zink* Brief 47). But Plaintiffs' reliance on *Garner* is misplaced.

In *Garner*, the United States Supreme Court recognized that a state regulation that removed a parole board's discretion to hold parole reconsideration hearings as frequently as in the past could violate the Ex Post Facto Clause. But the potential problem in *Garner* was not the exercise of pre-existing discretion by a parole board but, rather, the potential of a challenged regulation to take that discretion away. The Court noted that "discretion, by its very definition, is subject to changes

in the manner in which it is informed and then exercised. The idea of discretion is that it has the capacity and the obligation to change and adapt based on experience." *Id.* at 253. The Court went on to hold that in its view the essence of the Ex Post Facto Clause claim was not that discretion had been changed in its exercise, but rather that the regulation allegedly did not permit pre-existing discretion to be exercised. *Id.* at 254.

The Missouri Supreme Court conducted similar Ex Post Facto Clause analysis in *State v. Lawhorn*, 762 S.W.2d 820 (Mo. 1988). In *Lawhorn*, the Missouri Supreme Court found an Ex Post Facto Clause violation could occur from a limitation on previously existing discretion, as opposed to the exercise of the discretion itself. *Id.* at 826. *Garner* is an example of the principle, discussed in *Lawhorn*, that an Ex Post Facto Clause violation does not occur from changes in modes of procedure that do not alter substantive rights. *Lawhorn*, 762 S.W.2d at 824 (citing *Miller v. Florida*, 482 U.S. 423, 430 (1977), quoting *Dobbert v. Florida*, 432 U.S. 282, 293 (1977)). In Missouri, offenders have no substantive right to execution by a particular chemical beyond their Eighth Amendment right to be free from cruel and unusual

punishment. Therefore, Plaintiffs have no plausible claim for relief under the Ex Post Facto Clause that is independent of a claim under the Eighth Amendment.

Further, the United States Supreme Court has found that a change in execution method does not violate the Ex Post Facto Clause because it does not change the punishment but rather only the means of producing the punishment. *Dobbert*, 432 U.S. at 293 (citing *Malloy v. South Carolina*, 237 U.S. 180, 183 (1915)). That analysis provides an alternative reason why Plaintiffs' ex post facto claim is without merit.

**V.    Plaintiffs' Due Process Clause claim failed to state a plausible claim on which relief can be granted.**

Plaintiffs alleged in their Second Amended Complaint that Defendants violated their right to notice and opportunity to be heard and access to courts under the Due Process Clause by modifying execution procedures in a manner Plaintiffs believe made it more difficult for them to attack the procedures (Appendix 187-201). The district court dismissed the claim relying on *Williams v. Hobbs*, 658 F.3d 842 (8th Cir. 2011), and *Lewis v. Casey*, 518 U.S. 343 (1996).

The district court properly dismissed Plaintiffs' claim. In *Lewis v. Casey*, the United States Supreme Court rejected any suggestion that the right to access the courts includes a requirement that the State must take affirmative steps to enable a prisoner to discover grievances or litigate effectively once in court. *See id.* at 354 (expressly disclaiming any suggestion that "the State must enable the prisoner to *discover* grievances, and to *litigate effectively* once in court"). Thus, as the district court held, *Lewis* defeats the Due Process Clause claim alleged by Plaintiffs in the district court as a matter of law.

This Court rejected a similar access-to-courts claim in *Williams v. Hobbs*, 658 F.3d 842, 851-52 (8th Cir. 2011). In *Williams*, this Court

observed that the "prisoners' argument is grounded in an inability to *discover* potential claims, which courts have held does not constitute a due process clause violation" (emphasis in original). "The prisoners do not assert that they are unable to file an Eighth Amendment claim, only that they are unable to discover a potential Eighth Amendment violation." *Id.*; *see also Clemons v. Crawford*; 585 F.3d 1119, 1129 n. 9 (2009) (no authority indicates condemned inmates have a right to know the backgrounds of execution personnel).

Other courts have also considered the issue and agree that claims of this type fail as matter of law. *Wellons v. Commissioner*, 754 F.3d 1260, 1266-67 (11th Cir. 2014) (citing *Lewis* for the proposition that neither the First, Fifth, or Fourteenth Amendments provide a right to know who manufactures execution chemicals); *Owens v. Hill*, 758 S.E.2d 794, 803-804 (Ga. 2014) (rejecting Due Process Clause claim based on nondisclosure of identity of compounding pharmacy); *Sepulvado v. Jindal*, 729 F.3d 413, 419-20 (5th Cir. 2013) (nondisclosure of execution protocol did not violate due process); *Valle v. Singer*, 655 F.3d 1223, 1236 n. 13 (11th Cir. 2011); *Beaty v. Brewer*, 649 F.3d 1071, 1072 (9th Cir. 2011) (change in execution protocol 18 hours

before execution did not violate due process); *Sells v. Livingston*, 750 F.3d 478, 481 (5th Cir. 2014) (no appellate decision has held there is a liberty interest in the disclosure of information about executions, so there can be no due process violation from nondisclosure).

Confronted with the district court's ruling, Plaintiffs now argue a different due process claim, namely, that they are being denied a "life interest" without due process of law because Defendants do not provide them with information about the manufacturers and suppliers of execution chemicals that they would find useful in applying for stays of execution (*Zink* Brief 48-55). But that is not the claim Plaintiffs presented to the district court in their Seconded Amended Complaint. A deprivation of the right to access the courts and a deprivation of the right to life are not the same thing. Because Plaintiffs did not give the district court a chance to address the right to life claim now asserted in this appeal, this Court cannot consider it. *See Hornbuckle v. Groose,* 106 F.3d 253, 256 (8th Cir. 1997) (noting a general prohibition on an appellant raising an issue for the first time on appeal).

Plaintiffs argue that the dismissal of their Due Process Clause claim conflicts with the United States Supreme Court's decisions in

*Mathews v. Eldridge,* 424 U.S. 319 (1976), *Kentucky Department of Corrections v. Thompson*, 490 U.S. 454 (1989), and *Hamdi v. Rumsfield*, 542 U.S. 507, 533 (2004) (*Zink* Brief 49-55). It does not.

In *Mathews*, the Court held that an evidentiary hearing is not necessary to terminate Social Security Disability benefits. In *Kentucky Department of Corrections*, the Court held that a Kentucky prison regulation on visitation did not implicate the Due Process Clause. In *Hamdi*, the Court held that American citizens detained as enemy combatants must be told the factual basis for the belief they are enemy combatants and must be given the opportunity to rebut that factual basis before a neutral decision maker. These cases have nothing to do with the Due Process Clause claim Plaintiffs presented to the district court in their Second Amended Complaint.[3]

---

[3] These cases also do not support the new due process claim asserted by Plaintiffs in this appeal. Plaintiffs do not have a "life interest" in this case, as they are not at risk of being deprived of their lives by virtue of these proceedings. Previous proceedings have already determined— consistent with the demands of due process—that Plaintiffs should be executed for their crimes. In short, this litigation will not permit the State of Missouri to take Plaintiffs' lives; it simply seeks to ensure that Plaintiffs' executions comport with the Constitution.

In short, Plaintiffs' claim as presented to the district court fails as a matter of law under *Williams v. Hobbs* and *Lewis v. Casey*, and the district court correctly dismissed it. Plaintiffs cannot raise a new due process claim that was not presented to the district court and accuse the district court of erring in dismissing it.

## VI. Plaintiffs' deliberate indifference to medical needs claim did not state a plausible claim on which relief can be granted.

In the Second Amended Complaint, Plaintiffs alleged "the premise of lethal injection is that the plaintiffs are supposed to be treated in a clinical therapeutic manner as if they were going in for an operation." (Appendix 122). Plaintiffs then argued that Defendants vary from clinical procedures by using compounded pentobarbital to carry out executions (Appendix 122-23). The district court rejected this claim, finding that executions are not medical procedures, as those involve taking measures for the well-being of a patient to cure an injury or disease, which is the opposite of what is done in carrying-out executions (Appendix 722-24).

Plaintiffs do not cite any cases showing that any court anywhere has ever accepted their novel claim that an execution can serve as a basis for an Eighth Amendment deliberate indifference to medical needs claim (*Zink* Brief 56-58). The principal case they cite—*Helling v. McKinney*, 509 U.S. 25 (1993)—is about the dangers an inmate might suffer from secondhand cigarette smoke from a cellmate (*Zink* Brief 57-58). There, the United States Supreme Court remanded the case to

permit the inmate to prove his claim that prison officials were, with deliberate indifference, exposing him to "an unreasonable risk of serious damage to his future health." *Id*. at 35.

Here, by contrast, the very purpose of an execution is to end life, not to cure diseases or injuries, or to prevent cancer from secondhand smoke. Plaintiffs did not allege to the district court, and do not allege to this Court, that any Missouri execution using pentobarbital has been anything but rapid and painless. What they implicitly argued to the district court is that because Missouri uses qualified professionals in its executions—a practice that has contributed to rapid and painless executions—executions in Missouri are really medical procedures (Appendix 122 Second Amended Complaint stating "plaintiffs are supposed to be treated in a clinical therapeutic, manner as if they were going in for an operation").

But Missouri executions are not medical procedures. They are executions that comply with the Eighth Amendment. Plaintiffs are merely attempting to set up a "heads I win, tails you lose" situation by arguing that Missouri's successful use of qualified personnel to conduct executions somehow converts an execution into a medical procedure. If

Missouri were to make executions less safe by using less qualified personnel, as Plaintiffs implicitly advocate, they would argue an Eighth Amendment violation.

In short, Plaintiffs' claim fails because challenges to execution procedures are controlled by *Baze* and *In re Lombardi*, not cases about medical procedures and health risks from environmental hazards. And, as discussed above in Point I, Missouri's execution protocol comports with the Eighth Amendment. Indeed, Missouri's method of execution was designed to *minimize* pain that might occur incident to the execution, not with deliberate indifference to it.

## VII. Plaintiffs' Equal Protection Clause claim did not state a plausible claim on which relief can be granted.

In their Second Amended Complaint, Plaintiffs alleged that the Department violates core provisions of execution protocol and thereby violates Plaintiffs' right to equal protection under the law (Appendix 147-65). Plaintiffs argue that Defendants have violated their rights to equal protection "by carrying out executions when stay proceedings are pending, in violation of a core aspect of their own written policy" (*Zink* Brief 59). They assert, "Such deviations violate the Equal Protection Clause, because the prisoners are left without any assurance that the state will execute them in accordance with established and consistent procedures" (*Zink* Brief 59, citing *Cooey v. Kasich*, 801 F.Supp.2d 623 (S.D. Ohio 2011), and *In re Ohio Execution Protocol Litig.*, 840 F.Supp.2d 1044 (S.D. Ohio 2012)).

The district court dismissed Plaintiffs' claim, concluding that deviations from execution protocols (which may result in differences in the manner in which an execution is carried out) only implicate the Equal Protection Clause when a State is shown to engage in "an actual pattern of treating prisoners differently in ways that did affect the risk of pain to which they would be subjected, and therefore the risk of being

subjected to cruel and unusual punishment." (Appendix 729-30) *quoting Towery v. Brewer*, 672 F.3d 650, 660 (9th Cir. 2012), and *citing In re Ohio Execution Protocol Litig.*, 840 F.Supp.2d at 1054-55; *Cooey v. Kasich*, 801 F. Supp.2d at 645-50 (S.D. Ohio 2011); *Powell v. Thomas*, 643 F.3d 1300, 1304-05 (11th Cir. 2011). The district court's reasoning was correct because absent any effect on the Plaintiffs' Eighth Amendment right to be free from cruel and unusual punishment, any allegation of disparate treatment of inmates under the execution protocol is not of constitutional dimension.

Plaintiffs' equal protection claim also fails for two more basic reasons. First, Plaintiffs read the execution protocol in an implausible manner in order to attempt to make all executions, except those involving volunteers, impossible; and second, Plaintiffs do not allege any disparate treatment between inmates.

In asserting this equal protection claim, Plaintiffs relied on a provision in the protocol that Plaintiff Nicklasson had cited in his unsuccessful stay motion, namely, the provision stating that if there is pending legal activity to halt the execution at 11:15 P.M. (before a scheduled 12:01 A.M. execution), the inmate will remain in his holding

cell and no IV line will be established "*until authority to do so is granted by the Director of the Department of Corrections / designee*." Plaintiffs argue that this provision "forbids the defendants from even escorting the prisoner from the holding cell to the execution chamber if there is pending legal activity to halt the execution" (*Zink* Brief 59).

But saying that the inmate will not be moved *without the Director's approval*, is not the same as saying the inmate will not be moved from the holding cell while litigation is pending. The protocol plainly gives the Director discretion to authorize removal from the holding cell even when a stay is being litigated.

Plaintiffs also assert that a provision in the chronological sequence of events in the protocol, which states that the Attorney General will be asked if there are any legal impediments or other reasons why the lawful execution should not proceed, bars executions while stay litigation is pending (Appendix 156). It does not.

Missouri's execution protocol calls for the Director or his designee to determine whether an inmate should be removed from his holding cell despite a pending stay motion. The protocol calls for the Department's legal counsel or his designee to ask the Attorney General

or his representative if there are legal impediments or other reasons an execution should not proceed. Plaintiffs are not the Director of the Department of Corrections, and they are not the Attorney General of Missouri. The Department does not violate the protocol by not allowing Plaintiffs to usurp those roles and supervise their own executions in a manner that would make sure the executions never occur.

Under Plaintiffs' implausible reading of the protocol, no inmate who was not a volunteer could ever be executed by the State of Missouri, because the inmate could simply file stay application after stay application until the twenty-four hours of the execution warrant expired. But that is not the law.

Finally, Plaintiffs do not argue that Missouri has treated inmates disparately by failing to execute any inmate (under an active execution warrant) who had stay litigation *pending* but no stay of execution in place. To the contrary, Plaintiffs' brief acknowledges that Missouri executed Plaintiffs Franklin, Nicklasson, and Smulls while stay litigation was pending (*Zink* Brief 60-61). Plaintiffs do not identify any inmate who was treated disparately by having his execution not carried out because of pending stay litigation. Without an allegation of

disparate treatment, Plaintiffs' Equal Protection Clause claim necessarily fails. *See Towery*, 672 F.3d at 660-61 (absent history of treating someone different and detrimentally there was no basis for an Equal Protection Clause challenge to an execution protocol).

## CONCLUSION

This Court should affirm the decision of the district court.

Respectfully submitted,

**CHRIS KOSTER**
Attorney General

*/s/Michael J. Spillane*

**Michael Spillane**
Assistant Attorney General
Missouri Bar No. 40704

*/s/ Shaun Mackelprang*

**Shaun Mackelprang**
Assistant Attorney General
Missouri Bar No. 49627

P.O. Box 899
Jefferson City, MO 65102
Telephone: (573)751-3321
Facsimile: (573)751-3825

*Counsel for Appellees*

# CERTIFICATE OF SERVICE AND COMPLIANCE

I hereby certify that the foregoing document is printed in 14 point proportionately spaced type (Century Schoolbook), that it was prepared with Microsoft Word 2010 Software, and according to this software contains 10,062 words. I also certify that this brief was electronically filed with this Court on August 25, 2014, and should be sent by this Court's electronic mail system to counsel for Plaintiffs who are e-filers with this Court. Upon acceptance of this brief counsel will mail the appropriate number of copies to this Court and to Plaintiffs' counsel:

Joseph W. Luby
Death Penalty Litigation Clinic
6155 Oak Street, Suite C
Kansas City, MO 64113
(816) 363-2795
jluby@dplclinic.com

Elizabeth Unger Carlyle
6320 Brookside Plaza #516
Kansas City, MO 64113
(816) 525-6540
elizabeth@carlyle-law.com

John William Simon
Constitutional Advocacy, LLC
7201 Delmar Blvd., Suite 201
St. Louis, MO 63130-4106
(314) 604-6982
simonjwl@yahoo.com

Cheryl Ann Pilate
Morgan Pilate LLC
926 Cherry Street
Kansas City, MO 64106
(816) 417-6694
cpilate@morganpilate.com

(cont.)

Jennifer Herndon
224 Hwy 67 North, #122
Florissant, MO 63031
(314) 831-5531
jenniferherndon@me.com

Richard H. Sindel
Kathryn B. (Kay) Parish
Sindel Sindel & Noble, P.C.
8000 Maryland, Suite 350
Clayton, MO 63105
(314) 721-6040
rsindel@sindellaw.com
kparish@sindellaw.com

Michael J. Gorla
555 Washington Ave., Suite 600
St. Louis, MO 63101
(314) 621-1617
mjgorla@msn.com

Eric W. Butts
555 Washington Ave., Suite 600
St. Louis, MO 63101
(314) 621-1617
ewbutts@sbcglobal.net

Lowell D. Pearson
Husch Blackwell LLP
235 East High Street
Jefferson City, MO 65102-1251
(573) 761-1115
lowell.pearson@huschblackwell.com

Susan M. Hunt
819 Walnut
Kansas City, MO 64106
(816) 221-4588
shunt5733@aol.com

*Counsel for Appellants*

*/s/Michael J. Spillane*

Michael Spillane