IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

———————

No. 14-2220

———————

DAVID S. ZINK, LEON TAYLOR, WALTER T. STOREY, EARL RINGO,
RODERICK NUNLEY, PAUL T. GOODWIN, ANDRE COLE, REGINALD
CLEMONS, CECIL CLAYTON, MARK A. CHRISTESON, RUSSELL EARL
BUCKLEW, DAVID M. BARNETT, RICHARD STRONG, MARCELLUS
WILLIAMS,

Appellants,

v.

GEORGE A. LOMBARDI, Director, Missouri Department of Corrections,
DAVID DORMIRE, Director, Division Adult Institutions, Missouri Department of
Corrections, MATTHEW BRIESACHER, Counsel, Missouri Department of
Corrections, TERRY RUSSELL, Warden, Eastern Regional Diagnostic &
Correctional Center, JOHN DOES 2-40

Appellees.

———————

Appeal from the United States District Court
for the Western District of Missouri, Central Division,
The Honorable Beth Phillips, District Judge

———————

REPLY BRIEF OF APPELLANTS

———————

Joseph W. Luby*
Death Penalty Litigation Clinic
6155 Oak Street, Suite C
Kansas City, MO 64113
(816) 363-2795
jluby@dplclinic.com

Elizabeth Unger Carlyle
6320 Brookside Plaza #516
Kansas City, MO 64113
(816) 525-6540
elizabeth@carlyle-law.com

Counsel for Appellants

*Additional counsel listed on inside cover

John William Simon
Constitutional Advocacy, L.L.C.
7201 Delmar Blvd, Suite 201
St. Louis, MO 63130-4106
(314) 604-6982
simonjw1@yahoo.com
*Counsel for Appellants Bucklew
and Ringo*

Cheryl Ann Pilate
Morgan Pilate LLC
926 Cherry Street
Kansas City, MO 64106
(816) 471-6694
cpilate@morganpilate.com
*Counsel for Appellant Bucklew*

Jennifer Herndon
224 Hwy 67 North, # 122
Florissant, Mo 63031
(314) 831-5531
jenniferherdon@me.com
*Counsel for Appellants Goodwin,
Nunley, Strong, and Storey*

Richard H. Sindel
Kathryn B. (Kay) Parish
Sindel Sindel & Noble, P.C.
8000 Maryland, Suite 350
Clayton, Missouri 63105
(314) 721-6040
rsindel@sindellaw.com
kparish@sindellaw.com
*Counsel for Appellants Barnett,
Ringo, and Zink*

Michael J. Gorla
555 Washington Ave., Suite 600
St. Louis, Missouri 63101
(314) 621-1617
mjgorla@msn.com
*Counsel for Appellants Goodwin,
Nunley, and Strong*

Eric W. Butts
555 Washington Ave., Suite 600
St. Louis, Missouri 63101
(314) 621-1617
ewbtts@sbcglobal.net
*Counsel for Appellant Christeson*

Susan M. Hunt
819 Walnut
Kansas City, Missouri 64106
(816) 221-4588
shunt5733@aol.com
*Counsel for Appellant Clayton*

Lowell D. Pearson
Husch Blackwell LLP
235 East High Street
Jefferson City, Missouri 65102-1251
(573) 761-1115
lowell.pearson@huschblackwell.com
*Counsel for Appellant Clemons*

Gary E. Brotherton
Legal Writes, LLC 640
601 West Nifong Blvd.
Building 1, Suite C
Columbia, Missouri 65203
(573) 875-1571
gebrotherton@legalwritesllc.com
*Counsel for Appellant L. Taylor*

Phillip M. Horwitz
640 Cepi, Suite A
Chesterfield, Missouri 63005
(636) 536-9644
pmhlth1@aol.com
*Counsel for Appellant Christeson*

Kevin L. Schriener
Law & Schriener, LLC
141 N. Meramec Ave. # 314
Clayton, Missouri 63105-3705
(314) 480-3389
kschriener@schrienerlaw.com
*Counsel for Appellant Storey*

Jessica E. Sutton
Death Penalty Litigation Clinic
6155 Oak Street, Suite C
Kansas City, Missouri 64113
(816) 363-2795
jsutton@dplclinic.com
*Counsel for Appellant Cole*

Kent E. Gipson
121 E. Gregory Boulevard
Kansas City, Missouri 64114
(816) 363-4400
kent.gipson@kentgipsonlaw.com
*Counsel for Appellant Williams*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

REPLY ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.    The prisoners bring a viable Eighth Amendment claim. . . . . . . . . . . . . . . . 1

      A.    The district court correctly ruled that the prisoners demonstrated
            a sufficient level of harm to survive a motion to dismiss.  . . . . . . . . . 1

            1.    *Baze* requires a plaintiff to show a "substantial risk of
                  serious harm". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

            2.    The prisoners' claim depends on demonstrated and
                  documented risks that are inherent to the state's method,
                  and not on the chance of an "isolated mishap". . . . . . . . . . . . 3

            3.    The state's authorities do not countenance dismissal. . . . . . . 4

      B.    The Supreme Court's grant of a stay-pending-appeal in *Bucklew*
            disproves any over-arching requirement that an Eighth
            Amendment complaint must always plead an alternative
            execution method. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      C.    Even disregarding the *Bucklew* stay, *Baze* itself does not require
            a prisoner to recommend an alternative means of execution. . . . . . . 7

II.   The state's desire to conceal a historically open practice—the supplying
      of Missouri execution drugs—in order to prevent public disapproval of
      that practice is inimical to the First Amendment. . . . . . . . . . . . . . . . . . . 9

III.  Because the Missouri Administrative Procedure Act allows aggrieved
      parties to challenge "unlawful" agency actions, it permits the prisoners
      to bring a claim that the Department of Corrections' execution method
      violates federal drug laws. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

IV.   The state's new protocol is not exempt from the Ex Post Facto Clause. . . 16

V.    The prisoners do not bring a new or different due process claim on
      appeal.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Appellate Case: 14-2220    Page: 4    Date Filed: 09/02/2014 Entry ID: 4191859

# TABLE OF AUTHORITIES

**Cases**

*Baze v. Rees*, 553 U.S. 35 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 4, 7, 8

*Beaty v. FDA*, 853 F. Supp. 2d 30 (D.D.C. 2012).. . . . . . . . . . . . . . . . . . . . . . . . . 15

*Bucklew v. Lombardi*, 134 S. Ct. 2333 (2014). . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7

*Chicago v. Mosely*, 408 U.S. 92 (1972). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Cole v. Conservation Commission*, 884 S.W.2d 18 (Mo. Ct. App. 1994). . . . . . . 15

*Cook v. FDA*, 733 F.3d 1 (D.C. Cir. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Dobbert v. Florida*, 432 U.S. 282 (1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Farmer v. Brennan*, 511 U.S. 825 (1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Fletcher v. District of Columbia*, 391 F.3d 250 (D.C. Cir. 2004). . . . . . . . . . 16, 17

*Garner v. Jones*, 529 U.S. 244 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 18

*Gregg v. Georgia*, 428 U.S. 153 (1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Helling v. McKinney*, 509 U.S. 25 (1993).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2

*Hill v. McDonough*, 547 U.S. 573 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Jones v. Bock*, 549 U.S. 199 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Madsen v. Women's Health Center*, 512 U.S. 753 (1994). . . . . . . . . . . . . . . 11, 12

*Malloy v. South Carolina*, 237 U.S. 180 (1915). . . . . . . . . . . . . . . . . . . . . . . 17, 18

*McCullen v. Coakley*, 134 S. Ct. 2518 (2014) . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*McIntosh v. LaBundy*, 161 S.W.3d 413 (Mo. Ct. App. 2005). . . . . . . . . . . . . . . 15

Appellate Case: 14-2220     Page: 5     Date Filed: 09/02/2014 Entry ID: 4191859

*Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1 (1978). . . . . . . . . . . . . . . 19

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950).. . . . . . . . . . . 19

*Oregon v. Ashcroft*, 368 F.3d 1118 (9th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . 15

*Owens v. Hill*, 758 S.E.2d 794 (Ga. 2014). . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 12

*Press-Enterprise Company v. Superior Court*, 478 U.S. 1 (1986). . . . . . . . . . 9, 12

*Ringo v. Lombardi*, 706 F. Supp. 2d 952 (W.D. Mo. 2010). . . . . . . . . . . . . . . . . . 5

*Ringo v. Lombardi*, No. 09-4095-CV-C-NKL, 2010 WL 4103201
    (W.D. Mo. Oct. 18, 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Schenck v. Pro Choice Network of Western New York*, 519 U.S. 357 (1997). . . . 11

*State ex rel. Koster v. Morningland of the Ozarks, LLC*, 384 S.W.3d 346
    (Mo. Ct. App. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Trop v. Dulles*, 356 U.S. 86 (1958). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Wellons v. Commissioner*, 754 F.3d 1260 (11th Cir. 2014). . . . . . . . . . . . . . . . 4, 5

*Whitaker v. Livingston*, 732 F.3d 465 (5th Cir. 2013). . . . . . . . . . . . . . . . . . . . 4, 5

*Williams v. Hobbs*, 658 F.3d 842 (8th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . 16, 18

**Statutes**

Mo. Rev. Stat. § 536.150.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Appellate Case: 14-2220    Page: 6    Date Filed: 09/02/2014 Entry ID: 4191859

**REPLY ARGUMENT**

**I.      The prisoners bring a viable Eighth Amendment claim.**

**A.      The district court correctly ruled that the prisoners demonstrated a sufficient level of harm to survive a motion to dismiss.**

The appellees disagree with the district court's ruling, but their arguments misread the law and the record.

**1.      *Baze* requires a plaintiff to show a "substantial risk of serious harm."**

The state first suggests that a plaintiff must show something beyond the "substantial risk of serious harm" described in *Baze v. Rees*, 553 U.S. 35, 50 (2008), and must establish at the pleading stage that an execution method is "sure or very likely to cause serious illness or needless suffering." Appellees' Br. at 11-12, 15, citing *Baze*, 553 U.S. 50.

The state misreads *Baze*. The relevant portion of the Chief Justice's plurality opinion quotes *Helling v. McKinney*, 509 U.S. 25 (1993); *see Baze*, 553 U.S. at 50. At the place the Chief Justice quotes it, this noncapital opinion sets out a general principle to govern prospective relief concerning prison conditions that ambiently affect prisoners' health:

> We have great difficulty agreeing that prison authorities may not be deliberately indifferent to an inmate's current health problems but may ignore a condition of confinement that is sure or very likely to cause serious illness and needless suffering the next week or month or year.

*Helling*, 509 U.S. at 34-35, cited in *Baze*, 553 U.S. at 50.

-1-

*Helling* concerned a prisoner's exposure to second-hand cigarette smoke from his cellmate, and the Court held that the prisoner stated a viable Eighth Amendment claim. 509 U.S. at 35. Needless to say, no single individual can possibly prove that second-hand smoke is "sure or very likely" to cause lung cancer or similarly serious harms. But that was not the actual test: "McKinney states a cause of action under the Eighth Amendment by alleging that petitioners have, with deliberate indifference, exposed him to levels of ETS [environmental tobacco smoke] that pose an ***unreasonable risk of serious damage to his future health.***" *Id.* (emphasis added).

The Chief Justice in *Baze* explained what the "sure or very likely" language from *Helling* actually means:

> We have explained that to prevail on such a claim there must be a "***substantial risk of serious harm***," an "objectively intolerable risk of harm" that prevents prison officials from pleading that they were "subjectively blameless for purposes of the Eighth Amendment."

*Baze*, 553 U.S. at 50, emphasis added, citing *Helling*, and quoting *Farmer v. Brennan*, 511 U.S. 825, 842, 846 & n. 9 (1994). This is the language that appears throughout the Chief Justice's opinion as the legal standard on the merits in *Baze*. *Id.* at 50, 52 & n.3; see also *id.* at 116 (Ginsberg, J., dissenting) (reflecting three votes for similar standard, and not disputed by the Chief Justice as to his phrasing of the test); *id.* at 36-37 (syllabus).

-2-

### 2. The prisoners' claim depends on demonstrated and documented risks that are inherent to the state's method, and not on the chance of an "isolated mishap."

The state next argues that the prisoners' claim depends on a series of "accidents" or "mistakes" by drug suppliers or execution personnel, and that the Eighth Amendment is indifferent to such an "isolated mishap." Appellees' Br. at 14-16. This argument misrepresents the prisoners' claim as well as the governing law. The likelihood of pain and suffering is an inherent consequence of the state's choice to use compounded "pentobarbital," combined with the legislative facts the prisoners have pled about the compounding-pharmacy industry and its lack of regulation compared to the FDA-approved pharmaceuticals used in previous execution methods. The prisoners have pleaded that compounding pharmacies are *systematically* unfit to provide pharmaceutical products that health-care professionals use in the exercise of their professional duties except under limited and patient-specific circumstances. App. 91-117.

More specifically, the prisoners and their experts explain that the precursor chemicals are likely of poor quality because reputable suppliers will not sell to compounding pharmacies, regardless of whether the pharmacies are making execution drugs. App. 98. Appellants have pleaded that after the fact testing cannot compensate for the lack of reliable precursor chemicals and normal government regulation in the manufacturing of them into a product for sale. App.

Appellate Case: 14-2220     Page: 9     Date Filed: 09/02/2014 Entry ID: 4191859

100-02, 255-59. And even beyond the obligations of pleading, the prisoners have explained their pleadings by example through the sworn testimony of two eminently qualified scientists, whose findings are exhibits to the pending complaint. App. 233-82, 290-91, 519-22.

Stripped to its essence, the state's about "accidents" means that a risk of pain is simply not cognizable unless the state creates that risk intentionally. But that is not the law, and indeed, that view garnered the votes of only two justices in *Baze*. *See* 553 U.S. at 94 (Thomas, J., concurring, and joined by Scalia, J.).

### 3. The state's authorities do not countenance dismissal.

Unable to find support for its position in *Baze*, the state cites three cases involving pentobarbital as an execution drug: *Owens v. Hill*, 758 S.E.2d 794 (Ga. 2014); *Wellons v. Commissioner*, 754 F.3d 1260 (11th Cir. 2014); and *Whitaker v. Livingston*, 732 F.3d 465 (5th Cir. 2013). Appellees' Br. at 16-17. These cases do not support the proposition urged, which is that an Eighth Amendment claim targeting compounded pentobarbital cannot survive a motion to dismiss. All three cases merely hold that the prisoners were not entitled to a stay or preliminary injunction because they did not show a "substantial likelihood" of success on the eventual merits. *Owens*, 758 S.E.2d at 800; *Wellons*, 754 F.3d at 1263, 1265; *Whitaker*, 732 F.3d at 466, 468. But the standard for obtaining a stay is markedly higher than the modest showing of a plausible claim that survives a motion to

dismiss. *Ringo v. Lombardi*, 706 F. Supp. 2d 952, 961 (W.D. Mo. 2010); *Ringo v. Lombardi*, No. 09-4095-CV-C-NKL, 2010 WL 4103201, at *1 (W.D. Mo. Oct. 18, 2010).

The three cases are distinguishable in any event. *Owens* and *Wellons* both involved an Eighth Amendment claim buried under the guise of a right to discovery, as opposed to a freestanding constitutional claim. *See Wellons*, 754 F.3d at 1264 ("Wellons argues that the Eighth Amendment entitles him to the information required to determine whether Georgia's lethal injection procedure is cruel and unusual."); *Owens*, 758 S.E.2d at 803 (noting that claims of due process, the Supremacy Clause, the separation of powers, and the First Amendment each "ultimately pointed back to his underlying claim [under the Eighth Amendment], even though that underlying claim was hypothetically and/or conditionally presented"). And, in the remaining case, *Whitaker*, the prisoners received all the information they had requested about the state's method of execution. 732 F.3d at 467. That fact stands in stark contrast with the proceedings below, in which the court suspended ongoing discovery. Add. 24.

**B.     The Supreme Court's grant of a stay-pending-appeal in *Bucklew* disproves any over-arching requirement that an Eighth Amendment complaint must always plead an alternative execution method.**

The state now argues that Russell Bucklew actually *did* propose an alternative method of execution by suggesting "imaging tests" to ascertain Mr.

Appellate Case: 14-2220     Page: 11     Date Filed: 09/02/2014 Entry ID: 4191859

Bucklew's tumors and the degree of his airway obstruction, and then to "evaluate the means for addressing the obstruction." Appellees' Br. at 17-18. Therefore, the state argues, the Supreme Court's stay does not disprove the requirement that a prisoner specify an alternative. *Id.*

The state's contention is disingenuous. In the Supreme Court proceedings, the state urged as follows:

> Bucklew's proposed changes in the Motion for Temporary Restraining Order and Preliminary Injunction (Document 2), with the exception of his complaint about methylene blue, which Missouri will not use in Bucklew's execution, ***are not really changes in the method of execution***.

App. 809 (emphasis added). The state referenced Mr. Bucklew's motion for an injunction, which itself urged "imaging studies" to ascertain his tumors and the resulting airway obstruction, along with a demand that the state "make any further changes to the protocol that are indicated by the results of Mr. Bucklew's imaging studies." *See Bucklew v. Lombardi*, W.D. Mo. Case No. 4:14-cv-8000-BP, ECF Doc. 2 at 1, 3, available in Bucklew Appendix at 88, 90 (8th Cir. Case No. 14-2163).[1] The state's current argument is the exact opposite of what it told the Supreme Court, which is that the imaging-and-adjustment proposal is "not really [a] change[] in the method of execution." App. 809.

---

[1] Appellants request that the Court take judicial notice of the proceedings in *Bucklew*, the appeal of which is being considered alongside this appeal.

-6-

Regardless of the state's about-face, it is doubtful that the Supreme Court granted a stay based on an alternative and passing comment made in Mr. Bucklew's reply brief. *See* App. 821-22. That brief comment followed a much more extensive discussion of whether Mr. Bucklew was required to propose an alternative at all. *See* App. 776-79, 781-83, 794, 802, 805-08, 821. The state mischaracterizes the subject matter of the Supreme Court proceedings, and thus, the likely basis for the Court's entry of a stay.

**C.    Even disregarding the *Bucklew* stay, *Baze* itself does not require a prisoner to recommend an alternative means of execution.**

The state also mischaracterizes *Baze*. It urges that the Supreme Court "specifically" ruled that a prisoner must show that the current method carries substantial risks "when compared to the known and available alternatives." Appellees' Br., quoting *Baze*, 553 U.S. at 61. Once again, the appellees take the Chief Justice's opinion out of context:

> A ***stay of execution*** may not be granted ***on grounds such as those asserted here*** unless the condemned prisoner establishes that the State's lethal injection protocol creates a demonstrated risk of severe pain. He must show that the risk is substantial when compared to the known and available alternatives.

*Baze*, 553 U.S. at 61 (emphases added).

The state's reading of *Baze* is doubly wrong. First, the "available alternatives" passage relates to a prisoner's ability to obtain a stay rather than surviving a motion to dismiss. Second, the above language shows that the Court

-7-

was resolving the claim placed before it, i.e., "grounds such as those asserted here." The prisoner in *Baze* argued that Kentucky could easily change to a one-barbiturate method or at least discontinue the use of a paralytic, and that the state's refusal to make either change violated the Eighth Amendment. *Id.* at 56-57. That type of claim indeed requires the prisoner to show that the suggested alternative is available and likely to reduce a significant risk of pain. *Id.* at 52, 61. But that does not mean that every prisoner must always suggest an alternative. To conclude otherwise is to divorce *Baze* from its context, as well as to infer that *Baze* repudiated the Court's precedents disclaiming the same alternative-method requirement that the state now advocates. *See Hill v. McDonough*, 547 U.S. 573, 582 (2006); *Jones v. Bock*, 549 U.S. 199, 213 (2007). The prisoners bring a viable claim.

**II.    The state's desire to conceal a historically open practice—the supplying of Missouri execution drugs—in order to prevent public disapproval of that practice is inimical to the First Amendment.**

The state makes the remarkable claim that "the identity of executioners (and by extension all members of an execution team) have historically been shielded." Appellees' Br. at 29. This statement ignores the fact that until October 18, 2013, the identities of the suppliers the state now seeks to hide were readily available both to plaintiffs challenging lethal injection processes and to the general public. While it is true that persons who participate in the execution chamber have been shielded from disclosure, the addition of suppliers, compounders, and prescribers to the list of anonymous executioners is novel. Thus, the rule of *Press-Enterprise Company v. Superior Court*, 478 U.S. 1, 10-12 (1986) applies. The prisoners, as members of the public, are entitled to the public information that has historically been available.

The appellees argue that the prisoners seek only to discourage health care professionals from participating in executions, and to cut off supplies of execution chemicals, and therefore they are not entitled to the information necessary to permit them to do that. Appellees' Br. at 26, 29. This argument ignores the unrefuted scientific evidence of record, which is that the provenance of the state's execution drug is essential to knowing the types and degree of dangers that the drug poses. App. 234, 260-61. The prisoners seek the information in order to

develop their claims. The district court itself dismissed the appellees' concerns as exaggerated, when it earlier declined to stay its order granting a limited disclosure of the state's pharmacy, laboratory, and prescriber:

> Defendants cite Plaintiffs' Amended Complaint for their contention that one of the reasons Plaintiffs seek the information is to promote censure and boycott of the compounding pharmacy. Plaintiffs' Amended Complaint does not support the proposition that Plaintiffs aim to promote boycott and censure, but even if it did, this Court's ordered protections prevent disclosure to the general public and allow for only very limited disclosure protected by a confidentiality agreement.

ECF Doc. 213 at 6. If the state were truly concerned about boycotts and censure— rather than discovery-aided scientific analysis of its execution drugs, and the informed public and judicial scrutiny that would follow—then it would have consented to the limited disclosure ordered by the district court rather than seeking mandamus.

In any event, it hard to imagine a more thorough rejection of the principles underlying the First Amendment than the argument now advanced by the state, which is that it must shield state actors in order to prevent people from voicing disapproval of those actors and their activities. The First Amendment exists precisely to guarantee the right of the prisoners, as well as other members of the public, to advocate their point of view and thereby persuade those most intimately connected to the execution process to cease participating in it. The Supreme Court speaks of "the guiding First Amendment principle that the 'government has no

Appellate Case: 14-2220     Page: 16     Date Filed: 09/02/2014 Entry ID: 4191859

power to restrict expression because of its message, its ideas, its subject matter, or its content.'" *McCullen v. Coakley*, 134 S. Ct. 2518, 2529 (2014), quoting *Chicago v. Mosely*, 408 U.S. 92, 95 (1972). While some restrictions on speech are justified by the public interest, those restrictions must be narrowly tailored to avoid an undue burden on free speech. Striking down a "floating buffer zone" which prohibited abortion opponents from approaching people entering and leaving abortion clinics, the Court explained, "Leafletting and commenting on matters of public concern are classic forms of speech that lie at the heart of the First Amendment[.]" *Schenck v. Pro Choice Network of Western New York*, 519 U.S. 357, 377 (1997).

Like the floating buffer zones at issue in *Schenck*, the appellees' actions in preventing the dissemination of the identities of those who compound, supply, and prescribe lethal injection drugs—and who are most centrally involved in the state's controversial practice of administering substandard grey-market pharmaceuticals to carry out the sovereign's ultimate punishment—effectively prevents the public from advocating and commenting directly to those persons. Notably, the Court in *Madsen v. Women's Health Center*, 512 U.S. 753, 773 (1994), rejected a ban on signs advocating against abortion that were visible to persons in or near the clinic. The fact that patients might find "the expression contained in such images disagreeable" did not justify excluding them entirely. *Id.*

-11-

The appellees rely on *Owens v. Hill*, 758 S.E.2d 794, 805-806 (Ga. 2014), a decision of the Georgia Supreme Court. Not only does this decision have no precedential weight here, its analysis is flawed and distinguishable. Like the appellees, the court in *Owens* relied on the fact that the identities of executioners have historically been withheld to find the that plaintiffs did not meet the first prong of the *Press-Enterprise* test. *See Owens*, 758 S.E.2d at 805. It is not clear from the *Owens* opinion whether Georgia, like Missouri, had ever revealed the sources of its execution chemicals. Without such a finding, the *Owens* analysis provides little guidance. As noted above, it is clear that the concealment of the identities of Missouri executioners did not, until after this case was filed, include the identities of suppliers of drugs. *See* Appellants' Br. at 33 and sources cited.

The Georgia court also held that the "comfort or peace of mind that anonymity might offer" to the suppliers justified the restriction. *Owens*, 758 S.W.2d at 805. But that conflicts with the holding of the United States Supreme Court in *Madsen*, that the fact that the persons shielded by the prohibition on signs might find their content disagreeable did not justify a complete ban on observable images. Finally, the Georgia court held, if the identity of the suppliers is disclosed, "there is a significant risk that persons and entities necessary to the execution would become unwilling to participate." *Id.* But persuading others not to participate in activities that the advocate disapproves is at the heart of the rights of

-12-

citizens under the First Amendment. The fact that the activity happens to be one carried out by the state does not change this analysis at all.

The possibility that those who supply execution drugs might not wish to participate if their identities were known is particularly important where the underlying issue concerns capital punishment. The Eighth Amendment to the United States Constitution prohibits cruel and unusual punishments. Whether a punishment is cruel and unusual is determined, at least in part, by measuring the "evolving standards of decency that mark the progress of a maturing society." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976), quoting *Trop v. Dulles*, 356 U.S. 86, 101 (1958). If the suppliers of execution chemicals lack "peace of mind" unless they remain anonymous, that is a sign of evolution in attitudes about the death penalty which the state should not be permitted to circumvent by preventing access to the information at issue here.

The prisoners are entitled to prosecute their First Amendment claim.

Appellate Case: 14-2220    Page: 19    Date Filed: 09/02/2014 Entry ID: 4191859

**III. Because the Missouri Administrative Procedure Act allows aggrieved parties to challenge "unlawful" agency actions, it permits the prisoners to bring a claim that the Department of Corrections' execution method violates federal drug laws.**

Appellees misapprehend the prisoners' argument. They insist that the Food, Drug, and Cosmetic Act and the Controlled Substances Act cannot be "enforced" by private citizens in civil rights suits. Appellees' Br. at 32-34. But they do not explain why Missouri cannot provide its own citizens with a private right of action against the state's own agencies. The Missouri Administrative Procedure Act allows an aggrieved party to seek judicial review when an agency's actions are "unconstitutional, ***unlawful***, unreasonable, arbitrary, or capricious or involves an abuse of discretion." Mo. Rev. Stat. § 536.150.1 (emphasis added). That is all the prisoners' claim seeks to do.

The state suggests that review is unavailable, because the Department of Corrections has not determined the prisoners' "legal rights, duties or privileges" by choosing a method of execution that violates federal law. Appellee's Br. at 33 n.2. But the Department has necessarily determined the prisoners' "legal rights"—and adversely so—by deciding that the prisoners can be executed in a manner that violates federal laws protecting the end-users of regulated pharmaceuticals. That "determination" of rights is no different from, or less formal

-14-

than, an agency's decision to terminate an employee,[2] the Milk Board's decision to recall and destroy a dairy's cheese,[3] or the Department of Corrections' decision to exclude a particular social worker from its approved list of sex-offender therapists.[4] The agency decision being challenged here is no less determinant of the affected party's legal rights.

Appellees fare no better arguing that the FDCA and CSA simply do not apply to lethal injections. Appellees' Br. at 34-36. If the state were correct, the District of Columbia Circuit would not have upheld an order requiring the Food & Drug Administration to interdict foreign-manufactured and unapproved thiopental that was destined for shipment to state governments wishing to carry out executions. *See Beaty v. FDA*, 853 F. Supp. 2d 30 (D.D.C. 2012), *aff'd in relevant part sub nom. Cook v. FDA*, 733 F.3d 1 (D.C. Cir. 2013). The Ninth Circuit's opinion in the assisted-suicide case of *Oregon v. Ashcroft*, 368 F.3d 1118 (9th Cir. 2004), does not establish a "lethal injection" exception to the FDCA.

---

[2]*Cole v. Conservation Commission*, 884 S.W.2d 18, 19-20 (Mo. Ct. App. 1994).

[3]*State ex rel. Koster v. Morningland of the Ozarks, LLC*, 384 S.W.3d 346, 349-50 (Mo. Ct. App. 2012).

[4]*McIntosh v. LaBundy*, 161 S.W.3d 413, 415-17 (Mo. Ct. App. 2005).

Appellate Case: 14-2220     Page: 21     Date Filed: 09/02/2014 Entry ID: 4191859

**IV.    The state's new protocol is not exempt from the Ex Post Facto Clause.**

Citing *Garner v. Jones*, 529 U.S. 244 (2000), the state argues that its choice of an execution method is a mere exercise of discretion that cannot implicate the Ex Post Facto Clause. Appellees' Br. at 39-40. But this Court has already ruled otherwise. *See Williams v. Hobbs*, 658 F.3d 842 (8th Cir. 2011). Three times, the Court in *Williams* cited *Garner* for the proposition an ex post facto violation depends on whether a changed execution method creates a "significant risk" of an increase in punishment, including the possibility that the state might omit anesthesia. *Williams*, 658 F.3d at 848, 849, 851.

This Court's reading of *Garner* is correct. Contrary to the state's argument, *Garner* does not condition an ex post facto claim upon the removal or limitation of an agency's previous discretion. *Garner* instead focuses on the enactment's real-world consequences, not its discretionary origin:

> When the rule does not by its own terms show a significant risk, the [claimant] must demonstrate, by evidence drawn from the rule's practical implementation by the agency charged with exercising discretion, that its retroactive application will result in a longer period of incarceration than under the earlier rule.

529 U.S. at 255. *Garner*, then, rejects the appellees' categorical distinction between statutes or rules that carry the force and effect of law and policies that an agency has discretion to modify unilaterally. "Rather, the question is one of practical effect," *Fletcher v. District of Columbia*, 391 F.3d 250, 251 (D.C. Cir.

-16-

2004). The practical effect, in this case, is that executions under the new protocol are substantially more painful than under the protocol in effect at the time of the prisoners' crimes.

Nor is it correct that a change of execution method can ***never*** violate the Ex Post Facto Clause. Appellees' Br. at 41. Neither authority cited by the state says any such thing. *Dobbert v. Florida*, 432 U.S. 282 (1977), makes no mention of execution methods; it instead held that an intervening change in the role of trial judges and juries in imposing death sentences was not an ex post facto law. *Id.* at 293. *Dobbert* supports the prisoners' argument that the state's newly-severe method of execution increases the punishment. *See id.* at 293-94 ("The new statute simply altered the methods employed in determining whether the death penalty was to be imposed; there was no change in the ***quantum of punishment*** attached to the crime.") (emphasis added).

*Malloy v. South Carolina*, 237 U.S. 180 (1915), is also unhelpful to the state. There, the Supreme Court found no ex post facto violation in South Carolina's change from hanging to electrocutions. *Id.* at 184. The Court observed that the statute "did not change the penalty—death—for murder, but only the mode of producing this ... The punishment was not increased, and some of the odious features incident to the old method were abated." *Id.* at 185. The very purpose of the change was to find "the most humane and practical method of

-17-

inflicting the death sentence." *Id.* The Court surveyed the practices of other states and noted the "well grounded belief that electrocution is less painful and more humane than hanging." *Id.* If the Supreme Court had meant that a change in the method of execution could ***never*** create an ex post facto law, the Court would not have taken the trouble to make these observations about the purpose, and its own view of the effect, of the change at issue in *Malloy*.

The prisoners remain entitled to pursue their claim that Missouri's current method "creates 'a significant risk' of increased punishment." *Williams*, 658 F.3d at 848, quoting *Garner*, 529 U.S. at 255.

Appellate Case: 14-2220     Page: 24     Date Filed: 09/02/2014 Entry ID: 4191859

**V.  The prisoners do not bring a new or different due process claim on appeal.**

Appellees seize on the term "life interest" and suggest that the prisoners are newly arguing that they have a right not to be executed. Appellees' Br. at 44. But that is not what the prisoners are arguing. Rather, they assert a "constitutional interest in avoiding an inhumane execution" and a "right to be free from cruel and unusual punishment," which is what gives rise to the protections of due process. Appellants' Br. at 48, 50. Perhaps it is confusing to call this concern a "life interest," but the prisoners are not arguing that they are entitled to have their death sentences eliminated.

The claim, instead, is that the state's method of administering anonymously-compounded pentobarbital implicates the prisoners' Eighth Amendment rights, and therefore, the prisoners are entitled to notice of the drug's provenance so that they may seek appropriate judicial remedies to which they are now denied meaningful access on account of the state's secrecy. *See Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 14 (1978) (purpose of notice is to "apprise the affected individual of, and permit adequate preparation for, an impending ***hearing***"); *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (notice must afford interested parties "an opportunity to ***present their objections***") (emphases added). The prisoners are entitled to litigate that contention below.

Appellate Case: 14-2220   Page: 25   Date Filed: 09/02/2014 Entry ID: 4191859

## CONCLUSION

The bulk of the state's arguments are adequately addressed in the appellants' opening brief. By addressing only those issues that warrant a separate reply, appellants do not intend to waive any arguments from their initial brief. Appellants respectfully request that the Court reverse the ruling and judgment below, and remand the case for further proceedings.

Respectfully submitted,


/s/ Joseph W. Luby

Joseph W. Luby
Death Penalty Litigation Clinic
6155 Oak Street, Suite C
Kansas City, MO 64113
816-363-2795
jluby@dplclinic.com

/s/ Elizabeth Unger Carlyle

Elizabeth Unger Carlyle
6320 Brookside Plaza, # 516
Kansas City, MO 64113
816-525-6540
elizabeth@carlyle-law.com

*On behalf of all appellants*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rules of Appellate Procedure 32(a)(7)(C), the undersigned certifies that this brief complies with the applicable type-volume limitations of Federal Rules of Appellate Procedure 32(a). This brief was prepared using a proportionally spaced type (Times New Roman, 14 points). Exclusive of the portions exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii), this brief contains 4,332 words, according to the word count function of WordPerfect X4 word processing software.

/s/ Joseph W. Luby
*Counsel for appellants*

## <u>CERTIFICATE OF SERVICE</u>

I certify that the above and foregoing brief was served on the Court and opposing counsel via the ECF system on September 2, 2014. Upon acceptance of this reply brief, counsel will mail one paper copy of it to each opposing counsel as follows:

Michael J. Spillane
Shaun Mackelprang
Office of the Attorney General
P.O. Box 899
Jefferson City, MO 65102

/s/ Joseph W. Luby
*Counsel for Appellants*